Plaintiff instituted this suit as the alleged subrogee under an insurance policy, for damages which it claims it had to pay on a certain Plymouth automobile, under a loss payable clause to the mortgagee of the alleged assured, who, it claims, retained an insurable interest in the car notwithstanding a certain arrangement entered into between himself and another party by which the latter had possession and custody of the car.
The alleged assured, Jessie L. Strickland, purchased the car from McConnell Motors Company on May 14, 1941. He paid $125 cash and for the balance of the purchase price executed his note for $427.68, payable in eighteen monthly installments of $23.76, beginning June 14, 1941. As security for the payment of the installment note, the seller retained a vendor's lien and chattel mortgage on the automobile. On May 16, 1941, Strickland had the car insured against loss by collision, by plaintiff insurance company, subject to a $50 deduction under a special clause of the policy. The policy also contained a loss payable clause in favor of McConnell Motors Company as its interest might appear. The deferred installment payments represented by the note held by McConnell Motors Company included the usual carrying charges involved in a transaction of this kind among them being the insurance premium due on the policy.
At a time when the purchaser, Strickland, still owed a balance of $300 or a little more, he became a bit pressed financially and went to his friend, Lawrence J. Arbour, for assistance. Under an arrangement which was finally agreed upon, Arbour took possession of the car, used it himself and began to make the payments due on it as they matured each month.
He had an old automobile which he turned over to Strickland and occasionally the latter, if he had a long trip to make, *Page 553 
used the Plymouth which he had turned over to Arbour. Whenever he made payments of the installments due, Arbour took a receipt from McConnell Motors Company but the same was always issued in the name of Strickland. It seems to have also been a part of their agreement that if at any time (apparently no limit having been placed) Strickland could and would reimburse Arbour the amount of money he had paid, the latter would redeliver the car to him. Nothing however seems to have been understood or agreed about the old car Arbour had turned over to Strickland, that is, whether the latter would return that car to Arbour in the event the latter would have been reimbursed the payments made by him on the new car.
On March 24, 1942, while Arbour had possession of the Plymouth car and was driving it north on South 10th Street in the city of Baton Rouge, he collided with another Plymouth car owned and being driven at the time by Neonetta Robins, one of the defendants, in the intersection of that street with America Street, the Robins' car going in a westerly direction at the time. The car insured by the plaintiff insurance company was damaged in the collision to the extent of $343.63. The plaintiff, feeling that it was obligated under its policy to pay the loss, issued its check in payment to the joint account of Jessie L. Strickland and McConnell Motors Company, in the sum of $293.63, that being the amount of the loss less $50 deductible under the policy.
Claiming to be the subrogee of the alleged insured, Strickland, it has brought this suit against Neonetta Robins and Great American Indemnity Company, liability insurance carrier on her car, to recover the amount which it alleges it was obligated to pay. The demand against the defendant is based on the ground that the loss for the damage to the car it had insured was caused through the fault and negligence of Neonetta Robins. This negligence is alleged to consist in her operating her car at approximately forty miles per hour in violation of the City ordinance of the City of Baton Rouge, in not keeping a proper lookout, in failing to accord Arbour the right of way over the intersection which he had preempted and in driving the front end of her car into the right side of the Arbour car when it had almost completely crossed the intersection. In the alternative plaintiff pleads that even though Arbour may have been guilty of any negligence, Neonetta Robins had the last clear chance to avoid the accident by passing to the rear of the Arbour car and failed to avail herself of it.
The defendants filed a joint answer in which they put all the allegations of plaintiff's petition at issue by denying practically all of them and then affirmatively averring that in the event plaintiff should be held to be legally subrogated to the rights of the owner of the Arbour car, it cannot recover for the reason that the accident was caused solely and entirely through the gross negligence of Arbour, which negligence is imputable to the plaintiff. In the alternative they plead that should Neonetta Robins be shown to have been guilty of any negligence, then Arbour's contributory negligence in the following respects bars the plaintiff's recovery: That he was driving in excess of twenty five miles an hour, the maximum speed as fixed by the city ordinance of the City of Baton Rouge and by the laws of the State of Louisiana, that he was not keeping a proper lookout and that he failed to accord to the Robins' car the right of way which it had obtained over the intersection by virtue of having preempted the same and also having entered it to the right hand side of his car. A few days after having filed their answer the defendants filed exceptions of no right and no cause of action.
The case was tried before Judge J. Caldwell Herget but before he disposed of it he was elected to the position of District Judge. It was then submitted to his successor Judge Leslie J. Fitch, who after assigning written reasons overruled the exceptions which had been referred to the merits by Judge Herget and on the merits, ruled in favor of the defendants and against the plaintiff, dismissing the latter's suit at its costs.
The plaintiff has taken and perfected the present appeal and the defendants have answered the same asking that the judgment be amended by maintaining the exceptions and in the alternative that it be affirmed.
We find but little difficulty in agreeing with the trial judge on his findings on the facts presented on the merits of the case, as we are satisfied that the accident was caused solely by the negligence of the driver Arbour and that Neonetta Robins did not have the last clear chance of avoiding the same, and since we have concluded *Page 554 
to affirm the judgment on the merits, it is unnecessary for us to consider and pass on the many complicated questions of law and of fact that arise under the exceptions.
The accident occurred at about five o'clock in the afternoon. Neonetta Robins, as we have already stated, was driving her car west on America Street and the car Arbour was driving was going north on South 10th Street. The drivers of the respective cars were the only two witnesses who testified concerning the actual happening of the accident.
Neonetta Robins is a colored woman, a registered trained nurse by profession. She has been a nurse for twenty-five years and we judge that she must be a middle-aged woman and above the average in intelligence among the people of her race. She testified that she was going between fifteen and twenty miles per hour, holding her car on the right hand side of America Street and that as she approached the intersection at South 10th Street she slowed down her speed, looked each way on South 10th Street and saw the Arbour car coming from the south. At that moment she definitely placed it at a driveway back of a house on the southwest corner of the intersection, facing north on America Street. She says that it was coming very fast so she stopped her car altogether. The other car kept coming on however and hit hers at the left front fender and bumper. It carried the bumper with it and when it got released the car turn over, twice. When it came to rest it was lying diagonally across the pavement on the sidewalk on the northwest corner. Her car was about in the middle of South 10th Street. She states that had she turned to her left in making an attempt to pass back of the other car she would have pulled directly into it.
She testified that the southeast corner of the intersection is a blind corner and that a driver going west on America Street cannot see a car coming from the south on South 10th Street until he has reached the edge of the pavement. That is why, she says, she did not see the Arbour car before she did, but even then, the point at which she placed it, when she did see it, is eighty-four feet from the intersection by actual measurement.
Arbour testified that he turned into South 10th Street from Government Street, two blocks south. He states that at Louisiana Avenue, one block from South 10th Street, there is an off-set in the street and that a car has to travel about five miles an hour to make the turn. He evidently intended to show that he could not have been going very fast but nevertheless he admits that he picked up speed in the block between Louisiana Avenue and South 10th Street and was going about twenty-two miles per hour when he entered the intersection. As he approached it he looked both ways and didn't see anything but afterwards he looked to his right again and saw the Robins car coming west. He says that he "knew that he was going to get to the intersection first but she kept on going" and when he realized that she wouldn't stop it was too late for him to do so, so he tried to speed up, pulled his car to his left and was practically clear to the middle of the street when she ran into him. The front of her car struck the door on the right side of his, he says, and her bumper went clear over his car and landed in a yard on the northwest corner of the intersection. His car turned over once, that he knows, and landed on the banquette on the northwest corner, about ten feet from the place of the collision. The Robins car was standing out in the street, facing northwest. He doesn't know if it was entirely in the intersection or not. On cross-examination he testified that when he saw the Robins car it was about fifteen or twenty feet in America Street and he was then "around five or six or maybe seven feet" from the intersection.
By the testimony of Officer R.J. Duhon, who investigated the accident, it is shown that the front of the Robins car was completely in the intersection, headed west, slightly to the north. The Arbour car was turned over on its left side facing west and approximately eight or ten feet north of the north parallel crossing on the sidewalk. To identify the point of the impact he made his measurements by stepping off the distance from the southeast and northeast corners of the intersection, and allowing three feet to each pace, he locates it at about twelve feet northwest of the southeast corner and between seven and eight feet southwest of the northeast corner. As both streets are shown to be twenty feet in width, it would appear that from the officer's testimony the point of collision was in or very near the northeast quarter of the intersection. He further states that he examined the scene for skid-marks but found none. *Page 555 
A printed copy of the ordinance of the City of Baton Rouge regulating traffic on the streets of that city was introduced in evidence and in paragraph (A), under section 28, is found the provision which applies regarding the right of way which governs in this case. That section reads as follows: "When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way, provided however, the driver of any vehicle traveling at an unlawful, reckless or dangerous rate of speed shall forfeit any right of way which he might otherwise have acquired hereunder." Therefore if it be conceded that Neonetta Robins had not preempted the right of way by having entered the intersection first, as she claims she did, there is no denying the fact that both cars entered almost simultaneously and, as she was approaching from the right, the right of way was hers and it was Arbour's duty to acknowledge it by letting her proceed across the intersection before he entered it.
We are left with the impression that she was driving very slowly and prudently as her car stopped in its tracks upon the happening of the accident. She may not have stopped her car entirely, as she says she did, before it was struck, but evidently had it under such control as to be able to stop it instantly. Arbour, on the other hand, was going at twenty-two miles per hour, at least, as he admits, as he approached the intersection, and on seeing that a collision was imminent, he accelerated his speed a little. Obviously the collision became imminent because of his failure to have recognized the other driver's right of way either by not having observed her car in time or by driving too fast and not having his car under proper control. The movements of his car following the impact tend to show that he was driving much faster than was the driver of the other car. Whilst he seems to be a bit reluctant about saying that there were obstructions on the southwest corner of the intersection, there seems to be no serious dispute about it being a blind corner and here again he apparently was negligent in failing to take the necessary precaution by slowing down so as to be better able to ascertain if there was traffic coming on America Street from the east.
Our consideration of the case leads us to the same result as was reached by the trial judge that there was no fault or negligence on the part of Neonetta Robins and that Arbour was wholly to blame for the accident. Under the facts as we find them, there was no chance for Neonetta Robins to avoid the accident and therefore the rule of the last clear chance which is invoked by the plaintiff does not apply.
For the reasons stated, the judgment appealed from is hereby affirmed, at the costs of the plaintiff, appellant herein.