No. 35,982

WORLEY ORR, *Appellee*, v. FRANK E. HENSY, *Appellant*.

(147 P. 2d 749)

Opinion filed
April 8, 1944.

*W. L. Cunningham*, of Arkansas City, argued the cause, and *D. Arthur Walker* and *William E. Cunningham*, both of Arkansas City, were on the briefs for the appellant.

*George Templar*, of Arkansas City, argued the cause for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was a damage suit growing out of a collision of automobiles at an intersection of township roads in Cowley county. It is a companion case to that of *Orr v. Hensy*, 156 Kan. 614, 135 P. 2d 565, wherein plaintiff's wife who was a passenger in her husband's car sustained injuries in the same collision. In this action the plaintiff husband has sued for damages in his own behalf.

It appears that at some distance west of Winfield two rural highways cross at right angles in the open country. The east-west town-

ship road on which plaintiff was driving was a graveled and much used country road. There was a slight upward grade east of the intersection. The north-south road on which defendant was driving was an ordinary dirt road, not so much used as the other. A motorist coming from the east had a clear view of the road and the intersection ahead of him for a considerable distance; and likewise had a clear view of any traffic coming from the north for some 400 feet. At that distance there was a knoll north of the crossroads beyond which no south-bound traffic could be seen by a motorist approaching the intersection from the east. From the knoll southward there was a slight downward grade to the crossroads; and a motorist coming from the north, as soon as he reached the crest of the knoll, had a clear view for a long distance of any traffic coming from the east.

In the late afternoon of May 17, 1941, in clear daylight, plaintiff and wife were returning from Winfield to their home which was not far from the crossroads. When plaintiff's car, proceeding westward, was more than half way across the intersection, defendant's car which came from the north crashed into the side of plaintiff's car and plaintiff was severely injured.

Hence this lawsuit.

Plaintiff alleged the material facts of the accident; that he was wholly without fault; and that his injuries and damages were caused through the negligence of defendant; and that defendant's negligence consisted of these delinquencies, to wit: (a) Failure to keep a careful lookout ahead and in failing to look either way or to observe other vehicles approaching the intersection. (b) Failure to drive the vehicle in which he was riding and operating it at such a speed that it could be stopped within the assured clear distance ahead, and in failing to apply his brakes or to turn aside and avoid striking the vehicle which plaintiff was driving. (c) Failure to yield the right of way to plaintiff when the vehicle which plaintiff was drivng was within the intersection before the defendant entered it. (d) Failure to drive his vehicle in a careful and prudent manner, having due regard for the condition of the highway, the surface thereof and the vehicles thereon. (e) Driving his vehicle at a speed greater than was reasonable and prudent under the circumstances then existing on said highway.

In a second cause of action plaintiff sought a recovery for damages to his automobile.

In defendant's answer, after certain admissions and a general

denial, he alleged that plaintiff was thoroughly familiar with both roads at the intersection and with the traffic thereon; that plaintiff was guilty of contributory negligence in various respects which contributed to and brought about the collision, and particularly in that plaintiff failed to keep a careful lookout ahead and failed to observe the approach of other vehicles at the intersection and failed to drive his car in a careful manner having due consideration to other traffic using the roads thereabout.

The cause was tried before a jury. While the evidence was extensive it did not develop any sharp dispute of material fact. The negligence of defendant was established. So, too, were the extent and gravity of plaintiff's injuries. The critical phase of the case turned upon the issue of plaintiff's contributory negligence. All the evidence showed without dispute that there were no obstructions to the view of a motorist approaching the intersection from the east, nor to the view of a motorist approaching the crossing from the north. Plaintiff testified that he was perfectly familiar with the crossing and had been over it on an average of once a week for the past ten years. He testified that on the afternoon of the accident the day was clear and dry; that his eyesight was good, and that the sun did not interfere with his vision. On the north side of the east-and-west road and east of the intersection there was only a wire fence, and no hedges, brush or shrubbery to cut off the view. Along the east side of the road north of the crossing there was the same sort of wire fence, the fence posts of which were not thick enough to obstruct the view.

Plaintiff's testimony, in part, reads:

"The grade on that north and south road, north from the intersection is a slight grade up hill. It goes up from the intersection north about 400 feet, at that point 400 feet north of the intersection, there is what you would call a knoll. After the north and south road reaches that point it drops down in a draw. . . . From my acquaintance with the road, I would say the driver of an automobile starting back here a quarter of a mile to the east of the intersection and from there on up to the intersection would be able to see a car any place south of that knoll as it came down that road. It would be in plain view. There would be nothing to obstruct his view of it at all. There wasn't anything that day to obstruct my view or prevent me seeing a car coming from the north. . . .

"Q. As you came up there from the east were you as you were going along watching to the north as well as to the west for approaching cars? A. Yes, sir. . . . The last time I remember looking to the north before I entered the intersection I would say I was something like 80 or 90 feet from the inter-

section. I don't mean 80 or 90 feet back of the center of the intersection. At that time I could see clear up to that knoll to the north. *If there had been a car anywhere south of that knoll I could have seen it. . . . If there had been a car anywhere south of that knoll I could have seen it if I had looked.* I don't see why I couldn't if it was moving. When I first saw the Hensy car, I would say it was 20 or 30 feet north of me. I was on the north side of the east and west road. At that time I would say my front wheels had crossed over the center of the north side of the road. . . . He was 26 to 30 feet north of me. I hadn't seen his car at any time from this knoll 400 feet north until it was down within 26 or 30 feet of my car. My guess would be from what I can remember it would be probably 30 feet from me. *It had traveled 370 feet from the knoll down to where he was when I saw him and I hadn't seen his car at all."* (Italics ours.)

The evidence showed that on the south side of the eastwest road, east of the intersection, there was a hedge which would obscure the view of a motorist approaching from the east, so that greater care and prudence on the part of the motorist would naturally be required to be on the lookout for traffic approaching the crossing from the south than from the north where the view was open and unobstructed. Plaintiff testified:

"As I came up there approaching the intersection there was no car approaching from the west within 600 feet and no danger of any car from the west. When I got to the corner or near the corner, I looked to the south to see if a car was approaching from the south. At that time I would say I was just entering the intersection. As I looked to the south I saw no car approaching from the south, then I just looked—turned my head to look to the west [north] and I got the flash of this car. *I didn't see the car before that time or hear it."* (Italics ours.)

A neighbor of plaintiff called as a witness in his behalf testified in part thus:

"I am familiar with the intersection, which we have generally located about two miles west and a mile south of Winfield. It is the intersection at which this accident occurred. . . . This east-and-west road was a gravel road. The road north of the intersection was a dirt road at that time and the traveled portion of it was 15 or 16 feet. I have observed this knoll north from the intersection. It is in the neighborhood of 400 feet north of the intersection. . . . The only obstruction to the view along the east side of the north and south road and along the north side of the east and west road was just a barbed wire fence and a telephone line. A Kansas barbed wire fence and a telephone line would not obscure the view very much. As a matter of fact, there wasn't anything to obstruct the view of a fellow coming down here from the north, if he had looked to the east to see if there was a car coming. *There wasn't anything there to obstruct the view of a man coming from the east towards the intersection. From a quarter of a mile east, a car coming from the north along this road, if he had looked and there had been a car between that knoll and the intersection, he could have seen it."* (Italics ours.)

Defendant's demurrer to the evidence and his motion for a directed verdict were overruled. The jury returned a general verdict for plaintiff and made special findings of fact, viz.:

"1. At what rate of speed was Orr's car traveling from a quarter of a mile east of the intersection until it reached the east line of the intersection? A. Approximately twenty miles per hour.

"2. At what rate of speed was Orr's car traveling from the east line of the intersection until the collision? A. Approximately twenty miles per hour.

"3. At what rate of speed was Hensy's car traveling from the knoll north of the intersection until it reached the culvert north of the intersection? A. Approximately forty miles per hour.

"4. At what rate of speed was Hensy's car traveling from the culvert north of the intersection until the collision? A. 40 miles per hour.

"5. Approximately how far north of the intersection was Hensy's car when Orr says he looked to the north from a point 80 or 90 feet east of the intersection? A. Approximately 160 to 180 feet.

"6. As Orr's car approached the intersection how far north of the intersection could a person in his car in the driver's seat have seen a car from the north if he had looked?

"(a) When he was 200 feet east of the intersection? A. He could see to the top of the knoll.

"(b) When he was 80 or 90 feet east of the intersection? A. He could see to the top of the knoll.

"7. Did Mr. Orr look for cars approaching from the north when he was 80 or 90 feet east of the intersection? A. Yes.

"8. Did Orr then see the Hensy car approaching from the north? A. No.

"9. What, if anything, was there to prevent Orr from seeing the Hensy car as it approached the intersection at that time? A. Nothing.

"10. In what distance could Orr have stopped his car when traveling at the speed which he was traveling as he entered the intersection? A. Approximately 20 to 22 feet."

Defendant filed the usual post-trial motions including one for judgment on the special findings of the jury. These were overruled; judgment was entered on the verdict, and defendant appeals.

The errors urged center about the rendition of judgment on the general verdict, in view of the special findings of fact.

As we have seen, there was no sharp dispute of material fact in this lawsuit; and the jury's special findings which control the general verdict (G. S. 1935, 60-2918, Civ. Code, § 294) project for our consideration the question whether the special findings of fact in this case convict the plaintiff of contributory negligence.

It cannot be gainsaid that it was the plaintiff's duty to look for traffic which might be approaching the intersection from the north, and to regulate his own approach to the crossing as the circumstances would require. Plaintiff testified that he did look when he was 80

or 90 feet east of the crossing, and that he did not see defendant's car approaching from the north, but there was nothing to obscure his view or which would have prevented his seeing it. The jury's special findings are in exact accord with plaintiff's testimony on these highly significant facts. Why then did plaintiff fail to see defendant's car, which the jury found was only 160 to 180 feet from the intersection when plaintiff looked but did not see it, when he was but 80 or 90 feet east of the intersection? There can be but one answer to this question, and this court and other courts have answered it many times. When a litigant has a duty to look and testifies that he did look but did not see what was plainly to be seen, such ineffectual looking has no more legal significance than if he had not looked at all.

Back in the days when automobiles were just coming into general use, it was held by this court—

"It is the duty of one in charge of an automobile, driving upon a public street or highway, to look ahead and see all persons and horses in his line of vision, and in case of accident he will be conclusively presumed to have seen what he should and could have seen in the proper performance of such duty." (*McDonald v. Yoder,* 80 Kan. 25, syl. ¶ 2, 101 Pac. 468.)

The rule just quoted accorded with the common law and with the statute then in force, and although the statute regulating the operation of motor vehicles has been repeatedly revised in the last thirty-five years, no later legislative enactment nor any later decision of this court has lessened the required duty of a motorist approaching public crossroads to look for other traffic within the range of his vision and to govern the operation of his vehicle as reasonable prudence may require under the circumstances. In *Leinbach v. Pickwick Greyhound Lines,* 135 Kan. 40, 55, 10 P. 2d 33, we said:

"The statutory rule governing the requisite degree of care in driving motor vehicles on public highways and city streets is in accord with the pertinent legal principles of due care which the courts have worked out independent of statutes. These rules of law are imperatively necessary for the protection of life, limb and property in this age of growing congestion of motor traffic, . . ."

The rule announced in *McDonald v. Yoder,* supra, is in accord with the rule of the textbooks. Thus in 3 Berry's Law of Automobiles (7th ed.) 27, it is said:

"One approaching an intersection is 'not only required to look, but he must look in such an intelligent and careful manner as will enable him to see the things which a person in the exercise of ordinary care and caution, for his own safety and the safety of others, would have seen under like circumstances.'

"A motorist will be held to have seen what he should have seen and what there was nothing to prevent him from seeing, and if he looks and fails to see an on-coming automobile in plain view he is negligent."

In 2 Blashfield's Cyclopedia of Automobile Law and Practice (Perm. ed.) 223, it is said:

"A motorist approaching a highway crossing, in order to exercise that reasonable care to avoid injuring or being injured which is the measure of duty of such drivers, must look for other vehicles approaching or crossing the intersection. The duty is, indeed, not merely one of looking, but is one of observation, imposing upon a motorist so approaching the necessity of being observant as to the traffic and general situation at or in the vicinity of the intersections; he must look in such an intelligent and careful manner as to enable him to see what a person in the exercise of ordinary care and caution for the safety of himself and others could have seen, under like circumstances."

These quoted textbooks fortify their statement of the rule with a wealth of authorities from almost every state in the union. See, also, the plethora of similar decisions digested in the 1943 Cumulative Supplement to Blashfield's text, at pages 99-105.

Now let us consider plaintiff's brief to learn, if we may, how a judicial declaration of plaintiff's negligence as a matter of law can be avoided, in view of the jury's special findings.

The negligence charged against defendant lay in his failure to keep a careful lookout and to observe the approach of other vehicles, failure to operate his car at a speed at which it could be stopped within the assured clear distance ahead, failure to apply his brakes, failure to yield the right of way, failure to drive his car in a careful manner, and in driving it at a greater speed than was reasonable and proper.

Of course the general verdict resolved in plaintiff's favor whatever material dispute of fact was raised on those allegations. So we need waste no time concerning defendant's negligence.

But since it was negligence for defendant to fail to observe plaintiff's automobile as it approached the crossing from the east how can we avoid saying it was negligence for plaintiff to fail to observe defendant's automobile as it came from the north? Each automobile was in plain view to the driver of the other car. Each driver failed to operate his car at a speed at which it could be stopped to avoid a collision at the crossing. Each driver was utterly oblivious to the approach of the other. This court cannot stultify itself by holding that in such situation defendant was negligent and that plaintiff was not. In *Stuck v. Tice*, 291 Mich. 486, 289 N. W. 225, the first section of the syllabus reads:

"Normally, when two cars collide on a bright clear day at the intersection of thoroughfares of equal importance, both drivers are to blame as it becomes the duty of both drivers to slow down and respect each other's rights."

Counsel for plaintiff direct our attention to that feature of the statute which gives precedence to the motorist who first enters the intersection. True, but that is not all the statute says which is pertinent here. G. S. 1943 Supp. 8-550, in part, reads:

"(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. (b) When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

In this case, of course, the two cars did not enter the intersection at exactly the same time. Plaintiff's car entered the intersection at 20 miles per hour, which would be 29⅓ feet per second. As the two cars collided about 27 feet west of the point where plaintiff's car entered the intersection, defendant's car could not have entered it more than one second behind plaintiff's. It may well be doubted whether the legislature contemplated that the right of precedence at a country crossroads would turn on the matter of a split second between approaching motorists.

But without ignoring plaintiff's momentary right of precedence, we cannot ignore the other equally potent rule of the same statute— that "when two vehicles enter an intersection from different highways at the same time *the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.*" In *Gulf Ins. Co. v. Robins* (La. App. 1943), 15 So. 2d 552, it was said:

"Where both automobiles entered intersection almost simultaneously, motorist approaching from right had the right of way and it was duty of other motorist to acknowledge it."

And in *Herndon v. Higdon* (D. C. Mun. App.), 31 Atl. 2d 854, it was said:

"A motorist approaching intersection was required to look in both directions, particularly to his right, as traffic from that direction had the right of way."

In *Gavin v. Everton* (Wash. 1944), 144 P. 2d 735, two sections of the syllabus read:

"All rights of way are relative, and duty to avoid accidents or collisions at street intersections rests on both drivers.

"Primary duty of avoiding accident at street intersection rests on driver on the left, which duty he must perform with reasonable regard to maintenance of fair margin of safety at all times."

It is vigorously argued in plaintiff's behalf that plaintiff had a right to rely on defendant's duty to obey the rules of the road and yield to plaintiff the right to enter the intersection first. We are at a loss how to apply that to the case at bar. If plaintiff had looked with sufficient care to have observed defendant's approaching car, he could, of course, measurably depend upon defendant's obedience of the rules of the road. But he himself did not observe the rules of the road. He did not look with sufficient care to see defendant's car speeding towards the crossing; and it is impossible to excuse his negligence on the fallacious presumption that the defendant whom he did not see would yield to him the right of precedence to cross the intersection. Clearly, according to a majority view of this court, the special findings of the jury convicted plaintiff of contributory negligence, and those findings compel judgment for defendant notwithstanding the general verdict. (*Cruse v. Dole*, 155 Kan. 292, 124 P. 2d 470; *Sayeg v. Kansas Gas & Electric Co.*, 156 Kan. 65, 67, 131 P. 2d 648.)

We have not failed to consider that in this case we have reached a different conclusion from *Orr v. Hensy*, 156 Kan. 614, 135 P. 2d 565, decided a year ago. To some of the justices who acquiesced in that decision, including the writer, it was a border-line case, in which some consideration was given to the fact that Mrs. Orr, a passenger in the car, could not in all respects be held to every detail of duty imposed upon the driver of the automobile to govern its operation in accord with the rules of the road and to operate it with due regard to other traffic which could be seen approaching the crossing from a different highway.

The judgment is reversed and the cause remanded with instructions to enter judgment for defendant.

HARVEY and PARKER, JJ., dissent.

SMITH, J. (dissenting): I find myself unable to agree with the opinion of the majority. It puts too much stress on what the plaintiff should have seen when both cars were over a hundred feet from the intersection. I am not concerned as much about what happened then as I am about what happened at the intersection. That is where the collision took place and the plaintiff was damaged. Nobody seems to dispute the fact that the plaintiff had entered the intersection and in fact was well across when the defendant entered it at a high rate of speed and caused the collision. It is too well

settled to permit the argument that the car which entered the intersection first had the right of way. I am not impressed with the attempt to distinguish this case from that of *Orr v. Hensy,* 156 Kan. 614, 135 P. 2d 565.