No. 43,260

In the Matter of the Estate of John Roth, Deceased. (ALICE M. McMURPHEY, *Appellee*, v. JAMES ROTH, Executor of the Will of John Roth, Deceased, *Appellant*.)

(382 P. 2d 320)

Opinion filed June 8, 1963.

*John G. Atherton,* of Emporia, argued the cause, and *Samuel Mellinger,* also of Emporia, was with him on the brief for the appellant.

*C. K. Sayler,* of Topeka, argued the cause, and *David H. Fisher, Donald Patterson,* and *Jack L. Summers,* all of Topeka, and *Everett Steerman* and *Elvin Perkins,* both of Emporia, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action involving a rural intersection collision in which both drivers were killed. There were no witnesses to the accident. The case was tried to a jury which was dismissed because it was unable to reach a verdict. Appeal has been duly perfected from orders overruling the defendant's demurrer to the plaintiff's evidence and motion for a directed verdict.

The only question presented is whether upon the evidence the plaintiff's decedent was guilty of contributory negligence as a matter of law.

This action is a wrongful death action brought by the surviving widow of George O. McMurphey for the benefit of herself and the minor children of McMurphey to recover damages resulting from the death of McMurphey in a motor vehicle collision. The action was instituted by the filing of a "PETITION FOR ALLOWANCE OF DEMAND FOR WRONGFUL DEATH" in the probate court of Lyon County, Kansas, in the estate of John Roth, deceased. Roth was the driver of the other vehicle involved in the collision. The collision resulted in the death of both McMurphey and Roth, the drivers of the two vehicles involved. The claim was transferred to the district court of Lyon County pursuant to G. S. 1961 Supp., 59-2402a.

The motor vehicle collision occurred at a rural intersection located southwest of Emporia, Kansas. The intersection was formed by the crossing of two county roads of substantially the same width and type. Both roads were surfaced with gravel. No stop signs or traffic control signs were present at the intersection as far as the vehicles involved in this collision are concerned.

On the 29th day of June, 1961, McMurphey, the husband of the plaintiff (appellee), was driving a 1961 Chevrolet gravel truck north on a north-south county road. The truck was empty and weighed 9,500 pounds without the driver. McMurphey had just unloaded his truck and was returning to the source of gravel for another load. He was familiar with this route and intersection, having followed the same route approximately eighty-six times within three weeks prior to the date of the collision.

Roth, driver of the other vehicle, was driving a Buick passenger automobile headed east on an east-west county road. He likewise was familiar with these roads and the intersection involved since he owned a farm a few miles distant from the intersection. On the morning of the collision he was returning from a trip to his farm. There were no passengers in either of the vehicles involved.

Although the petition speaks of a bank of weeds along the south side of the east-west road, the evidence was undisputed that no fence, brush or other obstruction to view was present on the south side of the east-west road for a distance of 300 feet west of the intersection. At this point there was situated a clump of trees and brush on the south side of the road which did obstruct the view. No fence, brush or other obstruction of any kind existed with respect to the north-south road. The intersection, therefore, was completely open from the west for eastbound traffic and from the south for northbound traffic, except for the trees and brush which were located 300 feet west of the intersection.

There was a drop in elevation in the east-west road of 6 inches at 100 feet west of the intersection, of 2 feet at 200 feet west of the intersection, and of 4½ feet at 300 feet west of the intersection. There was a gradual increase in elevation of 2½ feet from the intersection to a point 400 feet south of the intersection on the north-south road, thus giving McMurphey an advantageous view of the intersection.

At the time of the collision all loaded gravel trucks approached the intersection from the east on the east-west road in question and turned south at the intersection, proceeding south on the north-south road. All unloaded trucks proceeded north on the north-south road through the intersection and then turned east on another road some distance north of the intersection.

The only witness who saw either of the vehicles shortly before the collision was another truck driver who was employed by Lyon County on the same job with McMurphey. He testified he came into the intersection from the east with a load of gravel and turned south at the intersection. He proceeded south and when he was about 150 yards south of the intersection, he met McMurphey in his truck headed north. He thought McMurphey was going about 30 miles per hour at that time, but did not see his truck thereafter nor did he see or hear the collision.

Both vehicles proceeded into the intersection, reached the inter-

section at substantially the same time and collided, resulting in the death of both drivers. Both vehicles had proceeded 12 feet into the intersection when they collided. The front of the truck was over half way across the intersection when its left front bumper collided with the right front bumper of the Buick. The force of the Buick (weighing about half as much as the truck) turned over the truck and deflected it at a 45-degree angle to the northeast. The truck went 34 feet 8 inches where it struck and knocked down a utility pole and came to rest on its side. The Buick came to rest in an upright position northeast of the truck.

No brake marks were made by the truck prior to the impact, although the investigating officer stated he looked carefully for such marks. Brake marks were found behind the Buick car. These marks began 64 feet west of the point of impact and continued as solid marks in a straight line to the point of impact. The Buick was traveling in the north half of the east-west road at the time of the collision and the Chevrolet truck was traveling in the east half of the north-south road.

The appellee produced testimony of a police officer who was permitted to testify as an expert. He was asked a lengthy hypothetical question which assumed, among other things, that the McMurphey truck was traveling 30 miles per hour at the time of the impact. The witness testified that based upon the assumption the McMurphey truck was going 30 miles per hour at the time of impact, in his opinion, the Buick was going 76 miles per hour immediately before Roth applied the brakes on the Buick. He testified further that if the truck was going at a speed other than 30 miles per hour, as he had assumed, his calculation would be in error.

After the demurrer to the appellee's evidence was overruled, the appellant presented the testimony of a physicist, together with other testimony. The physicist testified in answer to a hypothetical question based on facts in evidence that in his opinion the Chevrolet truck was going at a faster rate of speed than the Buick.

At the conclusion of the appellant's testimony the demurrer to the appellee's evidence was renewed and a motion for directed verdict made. Both were overruled. Appeal was duly perfected from adverse rulings.

The appellee's claim is based upon G. S. 1961 Supp., 60-3203, which provides in part as follows:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter or his personal representative if the former might have maintained an action had he lived against the latter for an injury for the same act or omission. . . ."

It is thus apparent the appellee may recover for the death of George O. McMurphey only if McMurphey might have successfully maintained an action against the Roth estate had McMurphey lived, and conversely, if McMurphey could not have successfully maintained an action in the Roth estate had he lived, appellee may not now do so. (*Crowe v. Moore,* 144 Kan. 794, 62 P. 2d 846.) Therefore, contributory negligence of McMurphey would bar recovery by the appellee. (*Sullivan, Administrator v. Davidson,* 183 Kan. 713, 332 P. 2d 507.)

The appellant contends that the evidence introduced by the appellee in support of her claim shows, as a matter of law, that McMurphey did not exercise that degree of care required of him for his own protection, and that appellant may take advantage of this evidence which shows contributory negligence on the part of McMurphey by demurrer. (*Cruse v. Dole,* 155 Kan. 292, 124 P. 2d 470; *Ray v. Allen,* 159 Kan. 167, 152 P. 2d 851; and *Revell v. Bennett,* 162 Kan. 345, 176 P. 2d 538.)

In support thereof the appellant relies upon the facts heretofore stated, and concludes that McMurphey did not observe the approach of Roth's Buick, or if he did observe the approach of the Buick, he nonetheless proceeded into the intersection.

The appellant admits the instant death of both drivers and the absence of eye witnesses renders it difficult to fully account for the action and conduct of McMurphey immediately prior to and at the time of the collision, but argues the evidence of the appellee's witnesses was sufficient to support the statement of facts.

The appellant relies on *Orr v. Hensy,* 158 Kan. 303, 147 P. 2d 749, which is said to be remarkably similar to the case at issue, both with respect to the factual situation and the legal principles involved. In many respects the facts are similar to those in the case at bar with one exception, and that is that both drivers in the *Orr* case were living at the time of trial, and the plaintiff himself testified when he sought to recover damages for his injuries.

In the *Orr* case the plaintiff testified that he looked when he was

80 or 90 feet from the intersection and that he did not see the defendant's automobile approaching, but there was nothing to obscure his view or which would have prevented him from seeing it. The court said when a litigant has a duty to look and testifies that he did look but did not see what was plainly to be seen, such ineffectual looking has no more legal significance than if he had not looked at all. The court concluded "since it was negligence for defendant to fail to observe plaintiff's automobile as it approached the crossing from the east how can we avoid saying it was negligence for plaintiff to fail to observe defendant's automobile as it came from the north?" (p. 309.)

In a case such as the one at bar, when there are no eye witnesses, the appellee is entitled to prove her case and rely upon circumstantial evidence and the physical facts of the collision. (*Briggs v. Burke,* 174 Kan. 440, 257 P. 2d 164.) Under the circumstances of this case the testimony of the truck driver who saw McMurphey about 150 yards from the intersection proceeding at a speed of approximately 30 miles per hour was properly admitted into evidence. (*Siegrist v. Wheeler,* 178 Kan. 286, 286 P. 2d 169.) The officer's testimony that the speed of the Roth automobile, based upon all the physical facts, was 76 miles per hour was also properly admitted. (*Cherry v. State Automobile Insurance Association,* 181 Kan. 205, 310 P. 2d 907.) The fact that an automobile going 76 miles per hour travels 112 feet per second may be judicially noted. (*Ziegelasch v. Durr,* 183 Kan. 233, 326 P. 2d 295.) It may thus be noted when an automobile goes 76 miles per hour it would travel 300 feet is less than three seconds.

Another basic rule of law which benefits the appellee on this appeal is that there is a presumption a deceased person used due care for his own safety. On facts substantially similar to those in the case at bar, this court in *Byas v. Dodge City Rendering Co.,* 177 Kan. 337, 279 P. 2d 252, said:

". . . We think they show a situation concerning which reasonable minds might differ on the question of which driver had the right of way at the intersection and whether each maintained a proper lookout for approaching traffic. These factors, combined with the legal presumption that a deceased will be presumed to have exercised due care for his own safety in the absence of evidence to the contrary, were sufficient to withstand the demurrer and justified the submission of the facts to the jury under the well-established rule pertaining to such matters.

"The lower court did not err in overruling defendant's demurrer to plaintiff's evidence." (pp. 340, 341.)

The *Byas* case controls the decision herein.

Considered most favorably to the appellee the evidence gives the appellee the benefit of the emergency doctrine. In *Carpenter v. Strimple,* 190 Kan. 33, 372 P. 2d 571, the court said:

". . . for that matter, the jury may have believed that when appellant failed to slow down for the intersection appellee was confronted with an emergency, just prior to or after he entered the intersection. In such a situation the rule, also well-established, is that an operator of a motor vehicle, otherwise obeying the law, who is confronted with a sudden emergency and who, because of want of time in which to form a judgment, acts according to his best judgment but omits to act in a most judicious manner, is not guilty of contributory negligence. . . ." (p. 40.)

In the instant case McMurphey was approaching the intersection from the right and presumably at a reasonable rate of speed. He had a right to assume that an automobile approaching from his left would be traveling at a reasonable speed and would yield the right of way. An operator of a motor vehicle upon a public highway has the right to assume that others using the highway will observe the laws of the road, and until he has knowledge to the contrary he is not guilty of negligence in proceeding. (*Gibbs v. Mikesell,* 183 Kan. 123, 325 P. 2d 359; *State Farm Mutual Automobile Inc. Co. v. Cromwell,* 187 Kan. 573, 358 P. 2d 761; and *Jarboe v. Pine,* 189 Kan. 44, 366 P. 2d 783.)

If McMurphey saw Roth immediately upon the emergence of his vehicle from behind the clump of trees and brush, he would have had less than three seconds to react, apply his brakes on a graveled road and stop his truck before entering the intersection. Considering the evidence most favorably to the appellee and giving credence to the rules of law applicable under such circumstances, we think the question of McMurphey's contributory negligence is a matter for the jury to determine.

The judgment of the lower court is affirmed.