No. 46,691

SKELLY OIL COMPANY, a corporation, *Appellant,* v. URBAN RENEWAL AGENCY OF THE CITY OF TOPEKA, a corporation, *Appellee.*

(508 P. 2d 954)

Opinion filed April 7, 1973.

*L. M. Cornish, Jr.,* of Topeka, argued the cause, and *William T. Robbins,* of Kansas City, Mo., was with him on the brief for the appellant.

*Charles Rooney, Sr.,* of Topeka, argued the cause, and *Charles Rooney, Jr.,* of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal by the landowner from a judgment rendered on a jury award in an eminent domain proceeding.

On April 15, 1969, the condemning authority, Urban Renewal Agency of Topeka, acquired title to the land in question, located at 209 West Tenth Street in Topeka, for the development known as the Capitol Area Plaza Complex. The landowner, a major oil

company, being dissatisfied with the appraisers' award of $97,000, appealed to the district court. At trial the landowner used two expert witnesses upon the issue of valuation and the condemner used one. The jury verdict was for $79,500 upon which judgment was entered. This appeal ensued.

Prior to the tornado which occurred in Topeka June 8, 1966, the property was used as a retail service station and for vehicular parking. Structures on it were severely damaged by the tornado and subsequently remained in a state of disrepair pending final determination by the proper authorities that the property would be condemned. The property was not used as a service station.

Several points of error are raised for consideration.

Appellant asserts the trial court erroneously denied its request that the instruction contained in PIK 11.06 be given to the jury. The requested instruction is as follows:

"It is contended that the property here involved is not property of a kind that is customarily bought and sold and that it therefore has no measurable market value. If you are persuaded that this is true, then you must use a different measure of compensation in lieu of market value and to determine the amount of your award, you may consider the value of the property to the owner for his special use or purpose, or for any purpose to which his property is reasonably adaptable. These special uses or purposes must be real, not speculative, conjectural, or remote."

The background for the request derived from testimony of one of appellant's witnesses, Mr. Edwards, that he could find no sales of property comparable to appellant's property and therefore could not establish a market value. His opinion as to value was based on replacement value of the improvements plus the value of the land. He arrived at a valuation of $141,000. The argument is, if the jury was persuaded of the truth of Edward's testimony, then another measure of compensation in lieu of market value, as stated in PIK 11.06, would have been permissible and the jury should have been so instructed.

It is readily apparent why the witness was unable to find comparable sales. He simply declined to acknowledge that sales of other filling station and parking lot property in the area were comparable sales. Yet the record clearly reveals that at about the time of the taking other such property had in fact been sold. In advance of trial appellee provided appellant with specific information as to such sales and at trial appellee's expert witness used comparables in arriving at his opinion of market value. The other expert

witness offered by appellant, who appraised the property taken as being worth $116,000, used the income approach, based upon that which he considered to be the best use of an income-producing property, in arriving at its market value. The record indicates this witness acknowledged the existence of comparable sales although he found none exactly similar. It appears that comparable sales were discussed fully in the testimony of the two experts last mentioned.

Filling stations and parking lots generally are not of such unique or special character as not to be customarily bought and sold on the open market. Here the property was of a type commonly found in the area and not infrequently bought and sold, as shown by the evidence. The instruction in question relates primarily to property of a unique or special nature and should be given only where the property is not of a kind that is customarily bought and sold so that it can fairly be said the property has no measurable market value (see *Eisenring v. Kansas Turnpike Authority*, 183 Kan. 774, 332 P. 2d 539; *Van Mol v. Urban Renewal Agency*, 194 Kan. 773, 402 P. 2d 320). The trial court did give the customary instructions on valuation usual to a condemnation case (PIK 11.03 and 11.05). It also gave an instruction authorizing consideration of the best and most advantageous use to which the property was reasonably adaptable (PIK 11.11) and no prejudicial error resulted from the refusal to give the request instruction.

Appellant complains that the trial court erred in denying its request to comment in its closing argument to the jury respecting appellee's failure to produce a witness mentioned in appellee's opening statement to the jury. In this opening statement appellee's counsel stated he would call an appraiser witness who would testify that the subject property had a value of $88,400. Prior to trial appellee's counsel had written a letter to appellant's counsel to the same effect, naming the witness. Appellee did not call that witness. Appellant simply argues it had a right to comment in closing argument upon such failure and that the jury in turn could have drawn an inference adverse to appellee by reason of such failure. Appellant does not spell out the precise nature of the adverse inference to be drawn, nor is it entirely clear since the exact testimony expected to be adduced was stated in the opening statement.

We know of no rule requiring counsel to call every witness he has listed for discovery purposes or mentioned in his opening statement

to the jury. Counsel is, of course, bound to act in good faith in these matters.

In *Miller v. Braun,* 196 Kan. 313, 411 P. 2d 621, we had this to say respecting the purpose of opening statements:

"The opening statements of counsel are generally no more than outlines of anticipated proof and are not intended as a complete recital of the facts to be produced on contested issues. Their purpose is to inform the jury in a general way of the nature of the action and defense; to advise it of the facts relied upon by the party to make up his cause of action or defense, and to define the nature of the issues to be tried and the facts intended to be proved, so as to better enable it to understand the case." (pp. 316-317.)

Nothing in the record suggests bad faith on the part of appellee's counsel in not calling the witness after mentioning him in his opening statement. It must be recognized that circumstances may sometimes dictate a change of strategy during the course of a trial and that must remain a prerogative of counsel.

If the thrust of appellant's objection be that the witness would have testified adversely to appellee's position, then this contention likewise is untenable under the particular circumstances. The applicable rule is stated in 53 Am. Jur., Trial, § 475:

"The failure of either party to a civil action to examine a witness equally accessible to both offers no foundation for a prejudicial inference and is not a proper basis for argument." (p. 380.)

Here the witness cannot be said to be one within the control of appellee so as not to be readily accessible to appellant. In fact we are told he was present in the courtroom at the trial and available for use by either party desirous of calling him. Finally, it must be remembered that the latitude permitted counsel in closing argument lies largely within the discretion of the trial court. (*State v. Potts,* 205 Kan. 47, 468 P. 2d 78). We see no abuse of discretion in the ruling complained of.

Appellant contends the trial court erred in denying its motion for mistrial based on improper remarks in the closing argument of appellee's counsel. The challenged statements consisted of reference to the absence of testimony concerning income produced by the condemned property during the time it was used as a filling station in 1965 and 1966 prior to the tornado. The date of the taking of the property was April 15, 1969. At a pretrial hearing the court ruled that evidence of the rental value of the property prior to the tornado was inadmissible for remoteness.

In his closing argument counsel for appellee did state that one

of appellant's appraisers "never took into consideration what the property had produced in the past" and he further commented:

". . . [none of appellant's witnesses] could tell you or did one of them bring you any facts or figures about the productivity of that property up to and including May of 1966. Oh they say that is remote. What is remote about it? It is the last time operated so it is the best that we would have. Now there is a particular reason for that. They preferred to speculate on what the—compared with the Standard Oil station on the corner of 10th, southeast corner of 10th and Topeka. Why sure that would be a lot better than what this little oil station is going to do wedged in there between the Masonic Temple and the printing plant. So I say that when you compare and it is going to get down, I think, you can discount very frankly and just cast aside the testimony of the employees of Skelly. And so it gets down on one hand to what Bob Taggart said and what Mr. O'Flaherty said.

Later counsel stated:

"Now we don't have the problem here that you have so many times of rationalizing [capitalizing—?] income because they haven't offered any to you. But that is the real way to determine what a piece of property is worth. . . .

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"I want to say just one word and then I'm through. I want you to ask yourselves when you go to the jury room if they could sell the kind of gas that they say they can in the future, if they can get the income off the parking that they say they can, why don't we have their figures for the year of 1965 and as much of 1966 as they operated and that would help you no end. Now I'll grant you that there you would have to rationalize that everything would be different to some extent, but you could determine whether it would be— determine to the amount of 20%, 25%, of 30% up, and same as everything else. But it still would help you. And they just want you to take their figures out of the sky."

Appellant made no contemporaneous objection to the argument now complained of. Motion for mistrial on the ground of improper argument was made after the jury had retired for deliberation and before the verdict was returned. The motion was denied.

Appellant's appraisal witness O'Flaherty, who used the income approach in arriving at his opinion, obtained data on gallonage sales of several other filling stations in the area. He secured an estimate of gallonage from appellant's marketing division (the record does not disclose the basis for this estimate) but he had nothing on actual sales occurring on the subject property prior to the tornado. However, he did obtain gallonage data from one Standard Oil station going back about five years prior to the date of the taking, April 15, 1969. This latter testimony, adduced upon cross-examination, was received without objection and presumably furnished in part at least some foundation for the witness' conclu-

sion as to value. Thus the matter of sales occurring some time prior to the 1966 tornado was opened as a subject for fair comment. Appellant's witness Edwards was, without objection, also queried upon cross-examination by appellee respecting gas sales on the property prior to the tornado.

It is difficult to see the impropriety of the argument under the circumstances. However, assuming, without deciding, that it may have been improper we are impressed with the failure to make objection prior to retirement of the jury as some assessment of non-prejudicial impact. Had prompt objection been made to the mention of gas sales prior to the tornado when the subject first came up, further venture into the field might have been forestalled. The jury might have been admonished to disregard any mention of the subject. But no such objection or motion to disregard was made.

In *Roda v. Williams,* 195 Kan. 507, 407 P. 2d 471, we had this to say respecting improper jury argument:

". . . From the cold printed record it is difficult, if not impossible, to assess the impact of improper jury argument in every case. This is best left to the trial judge in the first instance who is in position to take immediate corrective action. Moreover, in this case no objection was made to the argument until upon motion for new trial.

"The trial court should, of course, of its own motion without waiting for objection from opposing counsel protect litigants from misconduct of counsel, particularly where the misconduct is so prejudicial that it must influence the jury. If the court fails to act of its own motion, then an objection should be made and a ruling thereon had in order to take advantage of the error in such improper conduct (88 C. J. S., Trial, § 196b). Such misconduct may be waived by failure to object (88 C. J. S., Trial, § 196e). This rule has been applied by this court." (p. 515.)

See, also, *State v. Fleury,* 203 Kan. 888, 457 P. 2d 44.

As already indicated, the trial court has considerable discretion in the latitude permitted in closing argument and we cannot say denial of the motion for mistrial amounted to an abuse of that discretion.

Finally appellant urges the jury's verdict was not sufficiently supported by evidence. The contention is untenable in view of the fact the verdict coincided exactly with the valuation placed on the property by appellee's expert witness. We find nothing to warrant disturbing the judgment and it is affirmed.

APPROVED BY THE COURT.

PRAGER, J., not participating.