No. 47,805

George D. Spraker, *Appellant,* v. Arthur Lankin and Thorobred Chevrolet, Inc., *Appellees.*

(545 P. 2d 352)

Opinion filed January 24, 1976.

*Gerald L. Michaud,* of Michaud, Cranmer, Syrios, Post & Levy, of Wichita, argued the cause, and *Robert Hall,* of Adams, Jones, Robinson and Malone, Chartered, of Wichita, was on the brief for the appellant.

*William A. Hensley,* of Turner and Hensley, Chartered, of Wichita, argued the cause, and *Lee Turner,* and *Raymond L. Dahlberg,* of the same firm, were on the brief for the appellee.

The opinion of the court was delivered by

Miller, J.: This action arises out of a collision between a motorcycle and a pickup truck. A jury trial resulted in a verdict for the defendants. Plaintiff appeals, contending that the court erred in admitting the testimony of an accident reconstruction expert, Kenneth Razak, and in permitting defendants' counsel, over objection, to comment during closing argument upon plaintiff's failure to call as a witness an expert whom plaintiff had consulted.

Plaintiff was riding his Honda motorcycle in an easterly direction on East 21st Street in Wichita, Kansas, on August 19, 1970. Defendant Lankin, in the course and scope of his employment with defendant Thorobred Chevrolet, Inc., was driving a pickup truck owned by Thorobred in a westerly direction on East 21st Street. Lankin attempted a left turn into a driveway, and the vehicles collided.

Plaintiff testified that he stopped at a light on Oliver. He then continued on east and observed the westbound pickup truck. As he saw the pickup move over to the center line, plaintiff relaxed his throttle. The vehicles were then 100 to 125 feet apart. Plain-

tiff was traveling about 25 to 35 miles per hour, in a forty mile per hour zone. The truck gave no turn signal. When the pickup crossed the center line, plaintiff realized it was making a left turn. He started braking when they were 60 to 80 feet apart, applying the front wheel brakes about fifty per cent and full on the rear. His "pure guesstimate" of the distance from the time brakes were applied to point of impact was 60 to 80 feet.

Plaintiff tried to steer around the pickup, but was unable to do so. His handlebars and windshield hit the last few inches of the pickup. He was thrown into the air, then slid down the pavement. Somebody told him later that he slid "like 40 feet or something." Plaintiff's Honda weighed about 620 pounds, including fuel and optional equipment.

Norman Hall, a traffic investigator for the Wichita Police Department with some 14 or 15 years' experience, was called to the scene. He was unable to locate a point of impact. He found no skid marks from either vehicle. He did observe a gouge mark in the pavement which he assumed was made by the motorcycle, but he is not certain it was. The motorcycle had been moved before he arrived, and was standing up, 68 feet from the gouge mark. Some gasoline was leaking from it; he saw no gasoline elsewhere.

Kenneth Razak, a consulting engineer and a qualified expert in the field, was retained by defendants to perform an accident reconstruction analysis of the collision. We summarize his testimony.

The ratio of weight to force or force to weight is called the coefficient of friction. The most accurate and dependable way to determine the coefficient of friction is to measure it in the situation or in as close to the situation as you can duplicate it.

To determine the coefficient of friction of a motorcycle sliding on its side, he suspended three motorcycles, weighing 120, 140 and 240 pounds, respectively, from the back of a tow truck, with the wheels 3 to 4 inches off of the pavement surface. The truck was driving 60 miles per hour on a section of asphalt paving west of Wichita, a surface similar to that of the accident site, although it appears that this site was level while the accident occurred on a grade. Each suspended motorcycle was dropped. He ran three such tests. The slide distances on the lightest motorcycle varied from 113 to 139 feet; distances varied as much as forty per cent. This was the first data ever compiled on motorcycle sliding tests. He calculated the coefficient of friction from the speed, the weight, and the slide distance from the point of first marking of the

motorcycle on the surface to the point where the cycle came to rest.

He also performed three braking tests to determine the coefficient of friction of a skidding motorcycle with the rear wheel locked and skidding. No brakes were applied to the front wheels; had front brakes been used, the stopping distance would have been reduced and the computed speed increased. A Harley Davidson motorcycle weighing 490 pounds and a driver weighing 190 pounds were utilized in the braking tests. He did not know the types of brakes with which the Harley or the Honda were equipped.

He used 60 to 80 feet as the braking distance, and 68 feet as the distance the motorcycle slid following impact. Based upon the data thus compiled, Mr. Razak estimated plaintiff's speed to be from 50.7 to 58.6 miles per hour at the time he applied his brakes.

Mr. Lankin was present in court throughout the trial but did not testify. Apparently Mr. Razak was defendants' only witness on the question of liability. The jury returned a verdict for defendants and plaintiff brings the matter here.

Plaintiff's first three points on appeal relate to the Razak testimony. Plaintiff contends that it was error to receive his opinion in evidence because the test conditions were dissimilar; the test results were scientifically inadequate and inconclusive; and the opinion was based on facts not in evidence.

Test results tending to establish contested facts have long been admissible in this jurisdiction. In an early action arising out of a collision between a horse-drawn carriage and a train, plaintiff offered evidence of tests made to determine whether the noise of trains coming through a cut would be deadened. We said:

". . . The evidence sought was competent upon proof that the place was the same, and that the test was made under the same or similar circumstances. . . .

. . . . . . . . . . . . . .

". . . The result of tests or experiments made under proper conditions are often admissible as tending to prove a fact in issue. [Citations omitted.] In offering such testimony care should be observed to show that the tests were made within the rule stated as to place and circumstances, and the court will not allow the evidence unless these requirements are observed." *Johnson v. Railroad Co.*, 80 Kan. 456, 464, 465, 103 Pac. 90.

*Leinbach v. Pickwick Greyhound Lines*, 135 Kan. 40, 10 P. 2d 33, was an action which arose from a collision between plaintiff's Dodge automobile and a passenger bus of the defendant. At page 48 the court says:

"Defendants also complain of the admission of testimony touching the sturdiness of Dodge sedan cars and that they will not collapse by being capsized. There is little merit to this point. Courts are inclined to look with favor upon experimental evidence and tests of relevant occurrences. These need not be exactly similar to the occurrence which the jury has under consideration; the degree of similarity must be taken into account in weighing its probative force; but if the similarity of conditions is slight the evidence of the test [or] experiment has little evidentiary significance . . . the trial court may properly rule it out altogether. . . ."

*Pool v. Day,* 143 Kan. 226, 53 P. 2d 912, was an action by a guest against the estate of the driver to recover for personal injuries sustained by the guest because of the alleged negligence of the driver. At page 231 this court states:

"Appellant urges strongly that there was error in the admission of experimental evidence without a preliminary showing of similarity or identity of condition. The evidence showing the distance at which an automobile could be stopped when traveling at certain rates of speed was based upon experiments made with a car of a different make than the one in which the accident occurred. It was made later than the other car and had the same kind of brakes, but with greater square-inch braking surface. Appellant insists that such evidence is incompetent unless based on similar or identical instrumentalities. This could practically never be found. Even the same automobile, if repaired, would be different after being repaired than it was when new. Seldom could two cars be found that would be substantially alike in operation. This difference goes to the weight of the testimony rather than to its competency.

. . . . . . . . . . . . . .

"In 22 C. J. 759, under the heading of Similarity of Conditions it is said:
" 'It is not necessary, however, that the conditions should be exactly identical, but a reasonable or substantial similarity is sufficient, and the lack of exact identity affects only the weight and not the competency of the evidence, provided always that there is such a degree of similarity that evidence of the experiments made will accomplish the desideratum of assisting the jury to an intelligent consideration of the issues of fact presented.' "

Experienced police officers and troopers of the Kansas Highway Patrol having the requisite experience and training have frequently been permitted to express opinions as to the speed of vehicles involved in highway collisions, based upon evidence observed at the scene, including direction of travel, skid marks, point of impact, damage to the vehicles, and the location in which the vehicles came to rest. *Cherry v. State Automobile Insurance Association,* 181 Kan. 205, 310 P. 2d 907; *Foreman v. Heinz,* 185 Kan. 715, 347 P. 2d 451; *Johnson, Administrator v. Huskey,* 186 Kan. 282, 350 P. 2d 14; *In re Estate of Storer,* 191 Kan. 645, 383 P. 2d 956; *In re Estate of Roth,* 191 Kan. 493, 382 P. 2d 320; and *Beardsley, Executor v.*

*Weber,* 213 Kan. 427, 516 P. 2d 936. The receipt of evidence by accident reconstruction experts and physicists has frequently been approved by this court. *McElhaney v. Rouse,* 197 Kan. 136, 415 P. 2d 241; *In re Estate of Roth,* supra; *Wegley v. Funk,* 201 Kan. 719, 443 P. 2d 323; *Howard v. Stoughton,* 199 Kan. 787, 433 P. 2d 567; *Hildebrand v. Mueller,* 202 Kan. 506, 449 P. 2d 587; and *Staudinger v. Sooner Pipe & Supply Corporation,* 208 Kan. 100, 490 P. 2d 619. In the latter case, we said:

"The qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial judge. [Citations omitted.]

"The trial judge may require a witness be first examined concerning the data upon which the opinion or inference will be founded before allowing him to testify in terms of opinion or inference. (K. S. A. 60-457.) When an expert witness is not or cannot be sufficiently advised of relevant and material matters prerequisite to his testimony on the subject the trial judge may reject the testimony. (K. S. A. 60-419.)" (p. 103.)

We criticized the submission of the witness' opinion in *Riley v. Holcomb,* 187 Kan. 711, 359 P. 2d 849. At pages 716, 717, the court said:

"This court has held that where a proper foundation is laid, a witness qualified as an expert may give his opinion based upon the length of skid marks, location of wrecked vehicles, damage to vehicles and independent tests, as to the speed of an automobile involved in an accident, the weight to be given such evidence, of course, being a matter for the jury to determine. [Citations omitted.] In this case the witness testified that he did not base his opinion upon evidence found at the accident, and that he did not remember why he formed his opinion that the defendant's speed did not exceed 70 miles per hour. . . ."

We found reversible error where the opinion was not based on personal knowledge or facts and data made known to the witness at the hearing, but was based solely on statements made later by a party to the collision. *Smith v. Estate of Hall,* 215 Kan. 262, 524 P. 2d 684. And in the recent case of *Massoni v. State Highway Commission,* 214 Kan. 844, 522 P. 2d 973, we held it reversible error to permit a trooper to testify as to the "cause" of the collision. At page 851, we said:

". . . [T]he court is of the opinion that the matters at issue were not sufficiently beyond the common knowledge of ordinary persons that the opinion of an expert would be helpful to the jury. The case was not of a complicated or technical nature. In other words the situation was one where the normal experience and qualifications of laymen jurors would have enabled them to draw proper conclusions without the aid of expert conclu-

sions or opinions. In such a situation expert testimony is inadmissible (*Gardner v. Pereboom*, [197 Kan. 188, 416 P. 2d 67])."

Turning to the facts of the case now before us, we note that the test vehicles and test conditions were quite dissimilar to those involved in the collision. Some of the obvious differences are the grade at the accident scene and the level test site; the different makes, sizes, weights, types and construction of the motorcycles; the types of brakes; the types of tires; and the surface areas of the portions of the various vehicles which came in contact with the surface of the highway. We have frequently held that such differences go to the weight of the testimony rather than to its competency. *Pool v. Day,* supra. The differences should be recognized and may be explained by the expert.

We regard as much more serious the statistics upon which the computations of the expert were based. Plaintiff testified as to his approximate speed and gave his "guesstimate" of the approximate distance between the vehicles, or between the motorcycle and the point of impact, at the time he applied his brakes. Damage to the vehicles was not disclosed. There were no skid marks. The experienced traffic investigator was unable to locate a point of impact. The one gouge mark in the pavement may or may not have been made by the motorcycle. The point where the motorcycle came to rest is unknown. It had been moved before the investigator arrived. Whether it was simply raised up and left upon its stand, or whether it was moved some distance, perhaps out of the traveled portion of the street, is not disclosed. We are thus faced with the testimony of a competent expert, computed upon the basis of an estimated braking distance, an assumed point of impact, and a possible sliding distance to the point where the motorcycle *may* have come to rest. To this speculative data the expert applied mathematical formulas derived from tests which varied as much as forty per cent. Faced with similar uncertain statistics as the basis for expert testimony, the Nebraska Supreme Court in *Flory v. Holtz,* 176 Neb. 531, 126 N. W. 2d 686, said:

"It is evident from this record that there is considerable speculation involved in the factors on which the opinions sought to be elicited must be based. The stopping distances of the vehicles after the accident, given in the hypothetical question, are merely estimates. The highway patrolman estimated the distance the pickup traveled after the accident, assuming the point of impact to be the center of the intersection, at from 25 to 30 feet, and the truck from 80 to 100 feet. Using an estimate, and certainly one with a range as great as these, creates a very serious doubt as to the accuracy

of any opinion. The question also assumes that nothing happened in the collision, other than the impact itself, which could have affected the distance the vehicles traveled after the impact. There are several factors which could make a difference. We have a situation where we are merely basing one guess upon another.

. . . . . . . . . . . . . .

"We are in the realm of pure speculation. The testimony is dependent upon too many assumptions. We should not confuse inferences drawn from facts and inferences. which are based upon mere assumptions. There is a vast difference between permitting an expert to give an opinion when all of the factors necessary to base an estimate of minimum speed are present and in permitting an estimate of actual speed based on assumptions that have no adequate foundation in the evidence. The apparent competency of the expert would merely aggravate the error.

"To permit the introduction herein of the opinions sought on the inadequate foundation laid would be to turn the trial of a collision case into a guessing contest for an expert. . . ." (pp. 537-539.)

We conclude that it was prejudicial error to submit this testimony to the jury. Opinions of experts are helpful to a court or jury in motor vehicle cases, particularly where there are no eye-witnesses to a collision. *In re Estate of Storer,* supra; *In re Estate of Roth,* supra; *Hildebrand v. Mueller,* supra. However, opinions must be based upon reasonably accurate data available at the scene. Where there is little factual data, computations based upon assumption and speculation should not be received in evidence.

We turn to appellant's final point. Plaintiff was permitted in closing argument to comment upon the failure of defendant Lankin to testify. Lankin was listed as a defense witness and was personally present throughout the trial.

Defendants were permitted over objection to comment in closing argument upon plaintiff's failure to call an expert who had been consulted by plaintiff's counsel, and who was present in the court-room.

Both parties cite *Skelly Oil Co. v. Urban Renewal Agency,* 211 Kan. 804, 508 P. 2d 954. Skelly had named the witness in its opening statement and had outlined his expected testimony. Opposing counsel was not permitted to comment in closing argument upon Skelly's failure to call the witness during trial. The witness had been present and available during the proceedings. The court held that a party is not obligated to call every witness he has listed. The witness was equally available to both parties and thus there could arise no prejudicial inference from the failure of one party to call him.

"In civil actions, counsel may properly comment on the failure of a *party* litigant who is present at the trial to testify as to a fact in issue . . ." (Emphasis supplied.) 75 Am. Jur. 2d, Trial, § 235, pp. 314-315. We hold that comment upon Lankin's failure to testify was proper.

The expert whom plaintiff had consulted, however, is a different matter. He was not listed as a witness and so far as we are aware he was not mentioned throughout the trial. Counsel thus went outside the record to inform the jury that plaintiff had consulted an expert and had not called him. Counsel proceeded to draw unfavorable inferences for the jury. We think this was error. A party may consult several experts, but no unfavorable inferences should arise and no comment upon failure to call them should be permitted, particularly where there has been no designation of the experts as witnesses in the case and their existence is not even disclosed by the record.

". . . [C]ounsel cannot draw inferences to the jury or comment to them on a failure to call a witness . . . where the existence of the witness is not disclosed by the evidence . . ." 88 C. J. S. Trial § 184, pp. 364, 365.

For the reasons stated the judgment of the lower court is reversed with directions to grant a new trial.