No. 45,027

DOROTHY M. AKIN, *Appellant*, v. Estate of Gladys Hill, Deceased, *Appellee.*

LINDA A. AKIN, by and through CHARLIE AKIN as her father and next friend, *Appellant*, v. Estate of Gladys Hill, Deceased, *Appellee.*

KATHLEEN STRAUSS, by and through RALPH H. STRAUSS as her father and next friend, *Appellant*, v. Estate of Gladys Hill, Deceased, *Appellee.*

(440 P. 2d 585)

Opinion filed May 11, 1968.

*Howard Harper*, of Junction City, argued the cause, and *C. Vincent Jones* and *Wayne W. Ryan*, of Clay Center, *Lee Hornbaker, Richard F. Waters* and *B. L. Abbott*, all of Junction City, were with him on the brief for the appellants.

*Evart Mills*, of McPherson, argued the cause, and *Robert F. Galloway, Edward F. Wiegers*, and *Keith W. Sprouse*, all of Marysville, and *Michael Thomas Mills*, of McPherson, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: These actions stem from a tragic head-on collision between two automobiles on a highway near Randolph, Kansas, which snuffed out six lives. The three plaintiffs, Mrs. Dorothy M. Akin, Linda A. Akin and Kathleen Strauss, were riding in the rear seat of a car driven by the decedent, Gladys Hill, and have sued

her estate for damages resulting from personal injuries, contending that Mrs. Hill was guilty of gross and wanton negligence within the purview of the guest statute, K. S. A. 8-122b. All three actions were consolidated for trial to a jury which returned verdicts in favor of the defendant estate. The plaintiffs have appealed, and their appeals have been consolidated in this court. In this opinion we will refer to them as plaintiffs, and to the estate of Gladys Hill as defendant.

The accident occurred in the late afternoon of June 15, 1964, as Mrs. Hill and her passengers were returning home to Blue Rapids from a state assembly of Rainbow Girls held in Wichita. Three of the group were members of the Rainbow Girls and the other two were interested adults. Mrs. Hill and one of the girls, Sue Garrett, who rode in the front seat, were killed by the impact. The other car was driven by Carroll Adams who, with members of his family, was returning to Salina from a picnic at Tuttle Creek. All of Mr. Adams' passengers, his wife, mother, father and uncle, were killed in the accident.

A brief résumé of the facts is in order before we undertake to discuss the points raised by plaintiffs on appeal.

The accident occurred on a north-south highway, U. S. 71, at the approximate crest of a low hill, the point of impact being just east of the center of the highway. The Hill car was proceeding toward the north and the Adams car was traveling south.

At the time of the impact, Linda Akin, one of the girls riding in the back seat of the Hill car, was asleep and remembered nothing about the collision. The other two passengers in the back seat, however, were awake and both testified that on the road home Mrs. Hill drove at speeds up to 80 miles per hour and that just prior to the collision she was driving at that speed on the left-hand side or west portion of the highway while proceeding up a hill. Both of them also testified that Mrs. Hill had been patting or tapping her face shortly before the collision.

In addition, Mrs. Akins testified she had warned Mrs. Hill, when they were south of Junction City, that she had better slow down, but this warning was not heeded; that Mrs. Hill's head was down slightly as someone screamed when the Adams car appeared over the rise in front of them, and that her head jerked up and she jerked the wheel sharply to the right.

Kathleen Strauss did not remember a scream but thought Mrs. Hill had driven off the road on the left-hand side; she wasn't sure

Mrs. Hill was asleep, but as she (Kathleen) saw the Adams car come over the hill, Mrs. Hill "roused up" and turned the wheel to the right.

Mr. Adams testified that as he came up the rise he saw the Hill car, which was partly off the road on his side, and was coming right at him; he slowed down thinking the Hill car would pull back on its side of the road "if they hadn't gone to sleep," but at the last moment he could see the car still coming at him, so he swerved to his left trying to avoid a head-on collision.

Pictures taken of the cars following the collision indicate that the front part of the Hill car struck the right-hand side of the Adams car.

The defense witnesses consisted of (1) a highway engineer who testified it would not be possible for a car going 80 miles per hour to negotiate the curve half a mile south of the accident site and also testified concerning the drop off from the crest of the rise; (2) an acquaintance of Mrs. Hill who met a car he assumed was hers somewhere south of the scene of the accident which he judged was traveling at 50 to 55 miles per hour and which flashed its lights as they passed; (3) a farmer whose home adjoined the place of the accident, who kept cattle, had two dogs and who testified there were some rabbits around, but had seen no animals on the highway where the collision occurred.

Nine points are raised on appeal, the first of which pertains to the giving of Instruction No. 26, which reads as follows:

"Because of the instincts of self-preservation and love of life, it is presumed that Gladys Hill at the time of the collision was exercising ordinary care to avoid injury. This presumption is overcome if you are persuaded by the evidence that the contrary was true."

This instruction was given to the jury after all the evidence was in, the jury had been instructed and the closing arguments had been completed. During the defendant's final summation, however, the plaintiffs had objected to certain statements made by defense counsel, but their objections had been overruled. When court was adjourned for the night additional instructions were requested which the court took under advisement.

The following morning the court gave four additional instructions to the jury, including No. 26, which had been requested by the defendant. The plaintiffs strenuously objected to the instruction on the ground that the so-called "love of life" presumption dis-

appears in the face of direct evidence of negligence, an abundance of which, they contended, was shown in this case.

We believe there is merit to the plaintiff's contention. Kansas has long adhered to the rule that because of the love of life common to all people it may be presumed that a person killed in an accident was exercising due care for his own safety, in the absence of evidence to the contrary. This presumption yields, however, to direct controverting evidence.

In *Brim v. Atchison, T. & S. F. Rly. Co.,* 136 Kan. 159, 12 P. 2d 715, a parallel situation was before this court. In that case, the driver of a truck was killed in a railroad crossing collision with the defendant's train. There was evidence of negligence on the part of the deceased. A "love of life" instruction was given which this court said "had no place in this lawsuit because there was not an absence of evidence on this point." (p. 164.) The case was reversed on appeal and our holding on the particular point involved in the present case was couched in this language:

"An instruction that in the absence of evidence the law would presume that the deceased used ordinary care to ascertain that he could drive across the railway track in safety because of the natural instinct of self-preservation of a normal person should not be given where there was in fact direct evidence to the contrary." (Syl. ¶ 3.)

The Brim decision was cited with approval and followed in *Blakeman v. Lofland,* 173 Kan. 725, 252 P. 2d 852, where the plaintiff claimed a complete loss of memory as a result of injuries sustained in an automobile accident. An instruction was requested to the effect that the plaintiff, being unable to testify, was presumed to have exercised due care for his safety. A refusal to give this instruction was upheld by this court in these words:

". . . Assuming, without deciding, the presumption of due care applies to persons who are suffering from loss of memory just as it does in cases where death results from an accident, a trial court does not err in refusing to give such an instruction where—as here—there was direct proof to the effect the person relying thereon had failed to exercise due care. . . ." (pp. 729, 730.)

A later expression of the rule relating to the "love of life" presumption is found in *In re Estate of Roth,* 191 Kan. 493, 382 P. 2d 320, where the drivers of both cars were killed in an intersection collision, and no eyewitnesses observed the tragedy. Under those facts, which obviously are dissimilar from those present here, we held the trial court did not err in submitting an instruction on the presumption of due care. However, we cite this case because once again the rule was laid down:

"Under circumstances stated in the foregoing syllabus, there is a presumption that a deceased person will be presumed to have exercised due care for his own safety *in the absence of evidence to the contrary.*" (Emphasis supplied.) (Syl. ¶ 2.)

Four persons survived the wreck involved in this case. Three of them were eyewitnesses, and testified, the fourth having been asleep at the time. All three of the witnesses agree that Gladys Hill was driving her car on the wrong side of the highway as she approached the crest of a hill and that she was still on the wrong side of the road when the Adams car came over the crest, both Mr. Adams and Kathleen Strauss saying that the left side of her car was off the pavement.

There is positive direct evidence that Mrs. Hill was driving at the excessive speed of 80 miles per hour and had previously been warned about her speed. The evidence of eyewitnesses strongly indicates that she was drowsy and sleepy as she was driving but that she "roused up" when the Adams car came in sight over the hill and tried to regain her own side of the road by jerking the steering wheel. The eyewitness accounts find corroboration in such physical factors as the point or place of impact and the damage sustained by each car, as pictured in exhibits.

We believe there was such abundance of cogent, direct and uncontradicted evidence showing negligence on the part of Mrs. Hill that any presumption of due care on her part was completely negatived, and that the "love of life" instruction had no rightful place in this lawsuit. Accordingly, we are constrained to hold the instruction was erroneously given.

The conclusion we have thus reached is borne out, in our judgment, not only by case law on the subject but by statutory direction, as well. K. S. A. 60-414 deals with the subject of presumptions. It reads as follows:

"Subject to section 60-416, and except for presumptions which are conclusive or irrefutable under the rules of law from which they arise, (a) if the facts from which the presumption is derived have any probative value as evidence of the existence of the presumed fact, the presumption continues to exist and the burden of establishing the nonexistence of the presumed fact is upon the party against whom the presumption operates; (b) if the facts from which the presumption arises have no probative value as evidence of the presumed fact, the presumption does not exist when evidence is introduced which would support a finding of the nonexistence of the presumed fact, and the fact which would otherwise be presumed shall be determined from the evidence exactly as if no presumption was or had ever been involved."

Although we have had no occasion to construe this statute as it

relates to the presumption of due care on the part of a deceased, it seems manifest to us that the presumption comes within the second category set out in subsection ($b$) of the statute. Generally it is held that a presumption is not evidence but simply a rule concerning or relating to evidence. (See cases collated in 33 Words & Phrases, Permanent Edition, Presumption, pp. 484, 485.)

In *Morris v. Chicago, M., St. P. & Pac. R. Co.*, 1 Wn. (2d) 587, 97 P. 2d 119, where the presumption of due care was under consideration, the court said:

"We are therefore now of the opinion that the following are the proper rules to be applied relative to the presumption of due care:

"(1) This presumption is not evidence, but will serve in the place of evidence until *prima facie* evidence has been introduced by the opposite party.

"(2) This presumption entirely disappears from the case upon the introduction of competent and material testimony of disinterested witnesses, as to the actions of the deceased immediately prior to and continuing up to the time of the accident; and where such testimony is introduced, the presumption should in no event be submitted to the jury. . . ." (pp. 604, 605.)

We cannot say that the facts which give rise to the "love of life" presumption possess probative value. In *State v. Scott et al.*, 111 Utah 9, 20, 175 P. 2d 1016, 1021, the Utah court speaks of evidence having probative value as that which "tends to prove an issue." Webster's Third International Dictionary defines the term probative as: "that furnishes, establishes, or contributes toward proof." In these days of innumerable auto accidents, we think the presumption of due care is tenuous at best, with little if any relationship to facts of probative value. Clearly this presumption differs materially from one such as the statutory presumption of intoxication arising from a minimum amount of alcohol in the blood. (K. S. A. 8-1001.)

We are aware of what was said in *Long v. Foley*, 180 Kan. 83, 299 P. 2d 63, but believe this case is clearly distinguishable. There, as here, the action was brought by a passenger in the car driven by the deceased, who was charged with gross and wanton negligence. However, a plaintiff's verdict was returned in that case and the defendant appealed. An instruction on the presumption of due care had been given the jury.

On appeal, the defendant estate assumed what appears to be an inconsistent position. On the one hand the estate argued it was entitled to the presumption that the decedent, with the love of life common to mankind, had exercised due care, while on the other hand it complained that a "love of life" instruction was given. In response, the court said that a careful analysis of the Brim case

showed it to be distinguishable. In any event, said the court, under the confronting facts and issues, it found nothing wrong with the instruction nor did its submission constitute error. We agree that the giving of the instruction in that case was not error of which the defendant could complain.

May it be said that the error in submitting the "love of life" instruction was prejudicial in this case? The court believes that it was, although it is recognized that questions of prejudice are not easy of solution from the position of an appellate court, and that honest differences of opinion often exist.

A claim of error must always be examined in the confronting frame of reference; never in a vacuum. In the instant case, we believe the gravity of the error was compounded by the circumstances under which the instruction was given and the use made of it by the defendant in the final summation. It will be recalled that the objectionable instruction was given the morning after all closing arguments had been concluded, after which the court permitted additional summations, the length of which are not shown of record. The record does reveal, however, that defense counsel referred repeatedly to the charge contained in instruction No. 26 that Mrs. Hill was presumed to have exercised due care for her safety.

In view of the overwhelming character of the evidence relating to Mrs. Hill's conduct, the conditions under which instruction No. 26 was given, and the nature of the defendant's final argument, we cannot say that the probability of prejudice was negligible. Accordingly, this case must be reversed.

The plaintiffs urge that judgment be entered in their favor on the question of liability and a new trial granted on the issue of damages only. Their basis for this contention is that the evidence permits no reasonable explanation for Mrs. Hill's actions except that she dozed off and drifted over on the wrong side of the road while driving at a speed of 80 miles per hour toward the crest of a hill, and that these facts constitute gross and wanton negligence as a matter of law.

The Kansas cases cited to support this claim involve matters of contract and are not controlling. The federal case cited was tried to the court, which found that certain facts, very much like those shown here, constituted gross and wanton negligence. The case is not authority for the proposition that such conduct, as a matter of

law, is gross and wanton negligence sufficient to take the issue of liability away from a jury.

Our limited research into this question indicates that authorities generally hold that where the driver of a motor vehicle has become drowsy or has fallen asleep, thus precipitating an accident, the issue of whether he has been guilty of gross and wanton negligence is for the jury to determine. Among cases to this effect, see *Newell v. Riggins,* 197 Va. 490, 90 S. E. 2d 150; *Potz v. Williams,* 113 Conn. 278, 155 Atl. 211; *Hodges v. Ladd,* 143 Colo. 143, 352 P. 2d 660; *Ching Yee v. Dy Foon,* 143 C. A. 2d 129, 299 P. 2d 668; *Sheehan v. Apling,* 227 Or. 594, 363 P. 2d 575. Consequently, we are not inclined to direct a verdict on the question of liability, but feel that this action should be resubmitted to a jury on all issues.

What we have said is sufficient to dispose on this action on appeal. We believe, however, there are a few other matters which may deserve brief mention.

The plaintiffs complain because final summations were not recorded by the official court reporter. This matter was raised in their motion for new trial, at the hearing of which the reporter, Mr. Gordon L. Johnson, testified the court did not direct him to take, or not to take, the closing arguments, and that he made a record of the defendant's closing summation only when he thought counsel was getting on dangerous grounds.

K. S. A. 20-903 sets out the duties of an official court reporter, so far as material to this case, as follows:

"It shall be the duty of the official reporter to attend upon the sessions of the court, or divisions thereof, of which he is reporter, at each term, when required by the judge thereof, and to take full stenographic notes of the evidence and of oral proceedings in such cases tried before said court or division as the judge thereof shall direct. . . ."

In *State v. Perkins,* 193 Kan. 589, 396 P. 2d 365, we had occasion to examine this statute in connection with an identical complaint advanced in a criminal action. We there held that where no request was made for the recording of closing arguments, the failure of the reporter to record them did not constitute error in the absence of a showing of prejudice. Our decision in Perkins is controlling on this question, even though it may be the better practice for a trial court to direct that summations be stenographically recorded in both civil and criminal trials.

It is contended the court erred in submitting this special question: "Was Gladys Hill guilty of gross and wanton negligence?" To this,

the jury responded: "Was not guilty." A second question contained this query: "If you answer the above question in the affirmative, then state what constituted said gross and wanton negligence?" This question remained unanswered.

We see nothing particularly wrong with these special questions. In *Allen v. Ellis*, 191 Kan. 311, 380 P. 2d 408, similar questions were submitted to the jury. The questions remained unanswered when the jury returned its verdict, and we held that the trial court erred in refusing to require the jury to answer them.

In conclusion we note that the trial court, in instructing the jury, made use of several instructions found in Pattern Instructions For Kansas (PIK). For example, a portion of PIK 8.85 defining gross and wanton negligence, was taken from the work on Pattern Instructions, as was PIK 8. 81 on emergency. Although no issue is before us relating to these instructions, we think it not inappropriate to observe that they appear to contain proper statements of the law. For that matter, the language of instruction No. 26 on the presumption of due care, taken from PIK 2.70, appears unobjectionable as an abstract statement of law, even though we hold it should not have been given under the special circumstances of this case.

The judgment of the court below is reversed with directions to grant plaintiffs a new trial.

Schroeder, J., not participating.