Monica Gene SUTTON, a Minor, by and
Through Her Next Friend, Marion C.
Miller, Plaintiff-Appellee,

v.

ANDERSON, CLAYTON & COMPANY, a
Corporation, Defendant-Appellant.

No. 443–70.

United States Court of Appeals,
Tenth Circuit.

Sept. 21, 1971.

294

Gerald T. Elliott, Kansas City, Kan. (Charles S. Schnider, and Schnider, Shamberg & May, Kansas City, Kan., of counsel, on the brief), for plaintiff-appellee.

Leonard O. Thomas, Kansas City, Kan. (David K. Fromme, and Weeks, Thomas, Lysaught, Bingham & Johnston, Chartered, Kansas City, Kan., on the brief), for defendant-appellant.

Before BREITENSTEIN, ALDISERT,* and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a wrongful death case wherein Monica Gene Sutton, a minor through her next friend, on behalf of herself and six other children and heirs at law of the deceased, Gene Wilbert Sutton, made claim against Anderson, Clayton & Company for the wrongful death of their father. Trial by jury culminated in a verdict in favor of Monica Gene Sutton in the sum of $35,000 plus an additional sum of $1,040.32 for funeral expenses. Anderson, Clayton & Company, hereinafter referred to as the defendant, now appeals.

Gene Wilbert Sutton, hereinafter referred to as the deceased, was an employee of the Simmons Mattress Company with offices in Kansas City, Kansas. The defendant carried on the business of reclaiming and selling cotton products at its plant in Bakersfield, California, and as a part of its operations baled and shipped bales of cotton linter to the purchasers and consignees thereof. On or about June 23, 1967, the defendant loaded and shipped a carload of linter in bales to the Simmons Company, the load consisting of a 125 bale shipment in a 50 foot railroad boxcar, with each of the bales weighing approximately 665 pounds and having dimensions of 44" x 36" x 26". The gist of the alleged negligence on the part of the defendant was that it had improperly loaded the boxcar in question and had failed to provide barricades to prevent the bales from moving and lodging against the door and from falling out of the boxcar when the door was opened.

The deceased was killed when he was struck by a bale of cotton which fell from the boxcar as he was assisting in the opening of the boxcar door. A fellow employee, one Robert Bell, had broken the seal on the car but was unable to slide open the car door manually. With the assistance of the deceased, Bell used a crowbar and then a four by four timber, but was able to open the door only a few inches because something in the car was obviously preventing the door from sliding open in normal fashion. It was their determination that force in the form of a forklift and a chain were necessary to open the car door.

One Lacy Smith was the forklift operator who thereafter assisted in this operation. A chain was fastened to the car door and the forklift and as pressure was applied the car door came open "suddenly" with a bale of cotton tumbling down and out of the car onto the deceased, killing him almost instantaneously.

As indicated, trial by jury culminated in a verdict in favor of the deceased's heirs at law and the defendant now appeals. In this appeal the defendant makes no issue concerning the finding by the jury of negligence on its part. Rather, it is here contended that the judgment should be reversed for any one or all of the following reasons: (1) The deceased was guilty of contributory negligence as a matter of law; (2) the trial court erred in giving a "love of life" instruction; (3) Lacy Smith, the forklift

* Of the Third Circuit, sitting by designation.

operator, was negligent and as a matter of law his negligence was an independent, intervening force which was a superseding cause of the injury and that, if this was not true as a matter of law, at the very least there should have been an instruction given the jury on the matter; (4) under Kansas law the deceased's heirs at law were not entitled to funeral expenses; and (5) improper conduct on the part of a juror during voir dire. We shall consider these matters seriatim.

## CONTRIBUTORY NEGLIGENCE

This issue was submitted to the jury under appropriate instructions defining the same. It is the defendant's contention that the trial court under the evidence should have held the deceased guilty of contributory negligence as a matter of law and that the judgment for that reason should now be reversed and the matter remanded with directions to the trial court to enter judgment for the defendant notwithstanding the verdict. We disagree.

In this regard the defendant argues that under the circumstances of the case the deceased was negligent as a matter of law in being in a place where he could be struck by the cotton bale which tumbled out of the boxcar when the door was sprung open. Emphasis is placed on the fact that some of Simmons' employees had varying degrees of knowledge that on prior occasions cotton bales had jammed against the boxcar door and that the bales had fallen from the boxcar when the door was forced open. The defendant also emphasizes that a fellow employee, though not the deceased, had looked inside and noticed a cotton bale against the door shortly before the forklift was called in to assist. On the other side of the coin, it is argued that in the instant case Lacy Smith, the forklift driver, had given no warning or notice

that he was about to put pressure on the door, as was the custom, and that when he did the door unexpectedly "snatched open," even as the deceased was at the very moment trying to get to a position of safety by climbing from the ground up and onto the dock proper. Suffice it to say, in our view of the matter the evidence, and particularly the inferences therefrom, are such as to render the issue of contributory negligence one of fact to be resolved by the jury, and not one of law to be decided by the court. Reasonable minds could differ as to whether the deceased was negligent in failing to anticipate a falling cotton bale, and the jury by its verdict has now said he was not. We in turn are not disposed to disturb such finding. See Kiner v. Northcutt, 424 F.2d 222 (10th Cir. 1970), where approval was given to the rule that under the federal standard a directed verdict is justified "only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." Suffice it to say that in the instant case the evidence of contributory negligence on the part of the deceased is not "all one way" nor is it overwhelmingly in favor of the defendant.

## LOVE OF LIFE

The defendant next contends that it was error on the part of the trial court to give the so-called "love of life" instruction.[1] In this regard counsel concedes that it is proper under Kansas law to give an instruction to the effect that because of the love of life common to all people it is to be presumed that a person killed in an accident was exercising due care for his own safety, but asserts that such instruction should be given only if there be an absence of evidence to the contrary. In effect he argues that such instruction is proper only if there be a *total* absence of evidence to the contrary, and that if there be any evidence

---

1. The "love of life" instruction was as follows:

    "Because of the instincts of self-preservation and love of life, it is presumed that Gene Wilbert Sutton, at the time of the accident which caused his death, was exercising ordinary care to avoid injury. The presumption is overcome if you are persuaded by the evidence that the contrary was true."

of negligence on the part of a deceased the instruction should not be given. In thus arguing much reliance is placed on Akin v. Estate of Hill, 201 Kan. 306, 440 P.2d 585 (1968). In *Akin* it was held that it was error to give a "love of life" instruction where there was an "abundance of cogent, direct and uncontradicted evidence" showing negligence on the part of the deceased. In that case there was evidence from four witnesses that immediately prior to the automobile accident there in question the deceased was driving 80 miles per hour on the wrong side of the road. In our view of the matter it cannot be said that in the instant case there was an "abundance of cogent, direct, and uncontradicted evidence of negligence" on the part of the deceased. In other words, in the instant case the quantity and quality of evidence concerning negligence on the part of the deceased does not measure up to that found in *Akin*.

Additionally, in *Akin* the Kansas Supreme Court found the error to be prejudicial because of the circumstances under which the "love of life" instruction was given and the use made of it in closing argument. The instruction in *Akin* was given the morning after all closing argument had been concluded, after which the court permitted additional summations, wherein there was much reference to the instruction. This is contrasted to the instant case where the "love of life" instruction was given at the same time as some 18 other instructions and reference to the same by counsel in closing argument was limited. Under such circumstances it is difficult to fathom how the giving of such instruction could constitute prejudicial error, especially when such instruction is considered with the instructions defining contributory negligence and the burden of proof in connection therewith.

Illustrative cases where the "love of life" presumption came into play even though the issue of negligence on the part of the deceased posed a jury question are: In re Roth's Estate, 191 Kan. 493, 382 P.2d 320 (1963); Byas v. Dodge

City Rendering Co., 177 Kan. 337, 279 P.2d 252 (1955); and Smith v. Bassett, 159 Kan. 128, 152 P.2d 794 (1944).

## INDEPENDENT INTERVENING FORCE

■ The defendant contends that it is entitled to judgment notwithstanding the jury's verdict for the reason that Lacy Smith, the forklift operator, was guilty of negligence as a matter of law and that also as a matter of law such negligence was an independent, intervening force which was a superseding cause of the deceased's untimely death. Alternatively, in the same general connection, counsel argues that at the very least this issue should have been presented to the jury under appropriate instruction. We disagree.

In our analysis of the matter, even assuming negligence on the part of Lacy Smith, such would not under the circumstances relieve the defendant from liability. At best, Lacy Smith's actions constituted a dependent, intervening force which was not a superseding cause. Restatement (Second) of Torts, §§ 440, 441 (1965). Stated differently, Lacy Smith's actions were an intervening force which was a normal consequence of a situation created by the defendant's antecedent negligence which continued up to the very moment the cotton bale tumbled out of the railroad car. Id. § 443. And the fact that Lacy Smith as the so-called intervening force may have himself been negligent does not excuse the defendant from liability. In this regard Restatement (Second) of Torts, § 447 (1965), reads as follows:

*"Negligence of Intervening Acts*

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

We find Kansas law to be in general accord with the Restatement on this matter. For example, in Steele v. Rapp, 183 Kan. 371, 327 P.2d 1053 (1958), it was said that one who negligently creates a dangerous situation cannot escape liability for the natural and probable consequences thereof, although the innocent act of a third person may have contributed to the final result. Similarly, in Rowell v. City of Wichita, 162 Kan. 294, 176 P.2d 590 (1947), it was stated that the rule that the causal connection between an actor's negligence and an injury is broken by the intervention of a new independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be a proximate cause, notwithstanding the intervening cause. In Cassity v. Brady, 182 Kan. 381, 321 P.2d 171 (1958), it was stated that liability in tort may flow from joint and concurrent acts of negligence on the part of two or more persons, in which event both may be liable. The aforementioned case additionally states that although in order to be concurrent the negligence of the two persons must be simultaneous, nonetheless a primary act of negligence may be so continuous in its character that it conjoins with an act of negligence of another committed at a much later date.

Application of the foregoing principles to the facts of the instant case convinces us that the action of Lacy Smith, the forklift operator, even if deemed negligent, would not excuse the defendant from liability to the deceased's heirs. Assuming, as we must, negligence on the part of the defendant in loading the boxcar, the defendant should have foreseen what actually happened thereafter; namely, a "loose" cotton bale jamming against the car door, the attempt to force the door open, and upon the sudden opening of the door the fall of the cotton bale from the boxcar onto whomever was below. We find no error in the trial court's handling of this phase of the controversy.

## FUNERAL EXPENSES

The defendant next complains that it was error to permit the deceased's heirs at law to recover the sum of $1,040.-32 as funeral expenses. It is agreed that under present Kansas statutes funeral expenses are recoverable in a wrongful death action. K.S.A. 60–1904. It is argued, however, that the statute permits such recovery only if one of the heirs has actually paid the funeral expense or has become liable for the same. In this regard it is said that in the instant case the funeral expenses were not paid by any heir, nor has any heir become liable therefor, and that on the contrary the funeral expenses have been paid by the Workmen's Compensation carrier. We note also that under applicable Kansas statute the compensation carrier is subrogated to plaintiff's recovery in the instant case in the amount of its payment of funeral expense, and has a lien therefor. K.S.A. 44–504. And it is said that the compensation carrier has in fact filed such lien. So, in a sense, it is argued, deceased's heirs at law have now become liable for such expense. There is apparently no Kansas case law construing the present statute as it relates to the recovery of funeral expense in a wrongful death action. In view of this, we should accept the application of the local law by the trial court, unless clearly convinced to the contrary, which we are not. Adams v. Erickson, 394 F.2d 171 (10th Cir. 1968).

## IMPROPER CONDUCT BY A JUROR ON VOIR DIRE

Finally, it is contended that the judgment must be reversed because of an occurrence in counsel's voir dire examination of the prospective jurors. Counsel was generally inquiring as to whether any of the prospective jurors in the jury box had been a party plaintiff in a personal injury action. If a juror raised his hand in response to a particular inquiry, counsel would then make further inquiry on an individual basis into the details. In response to a question as to whether any prospective juror had made "any kind" of a claim for personal injury, counsel did not notice the juror Deutman raise his hand, if indeed he did raise his hand. In fact, whether Deutman did or did not raise his hand in response to the voir dire inquiry is the nub of this particular phase of the controversy. In any event counsel did not question the juror Deutman concerning any prior claim for personal injury. Deutman was thereafter selected to serve as a juror, and then, after the trial was concluded, it later developed that Deutman had filed in 1966 a claim for $25,000 for personal injuries arising out of an automobile accident, which claim was settled for $2,250.

In post trial hearings affidavits and counter-affidavits were presented to the trial court on the issue as to whether Deutman did or did not raise his hand in response to this inquiry of counsel. Based thereon the trial court found that the juror had in fact raised his hand and that counsel had apparently simply not noticed it. For obvious reasons we are disinclined to go behind this finding, the trial court being in a much better position than we to determine a matter of such nature. So, we proceed on the premise that the juror did raise his hand as an affirmative response to counsel's inquiry, and that counsel simply did not see the raised hand and accordingly did not pursue the matter.

As to this point counsel relies in the main on Photostat Corporation v.

Ball, 338 F.2d 783 (10th Cir. 1964). Such reliance we believe to be misplaced. That was a case where prospective jurors failed to give truthful and complete verbal answers. Such is not the instant case. That counsel could overlook a raised hand in this type of situation is indeed understandable, but to reverse a judgment because of such oversight would in a sense be to reward inattention.

Judgment affirmed.