No. 46,499

CHRISTINA HAGOOD, *Appellant*, v. DONALD E. HALL, *Appellee.*

(505 P. 2d 736)

Opinion filed January 20, 1973.

*Forrest E. Short,* of Short and Short, of Fort Scott, argued the cause, and *Joel B. Short,* of the same firm, was with him on the brief for the appellant.

*Douglas G. Hudson,* of Hudson and Hudson, of Fort Scott, argued the cause, and *Douglas Hudson* and *David Mullies,* of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This wrongful death action arose from a collision of two pickup trucks in an intersection in the city of Fort Scott, Kansas. The factual circumstances giving rise to the collision were presented in the district court and a jury brought in a general verdict in favor of the defendant, Donald E. Hall.

The plaintiff-appellant is the widow of John B. Hagood. Mr. Hagood, who died as the result of this collision, was one of the drivers. Both drivers were alone in their pickups. The collision occurred at First and Clark Streets.

The defendant, Hall, was driving a 1966 Dodge pickup truck. He approached the intersection from the north and was going south on Clark Street. At the trial he testified he had intended to cross First Street and continue straight south on Clark Street.

The deceased, John B. Hagood, was driving an old model GMC pickup truck. He approached the intersection from the west and was going east on First Street. First Street and Clark Street are both surfaced with bricks. There were no tire marks visible on the brick pavement after the collision to indicate that either driver attempted to turn or brake his vehicle prior to the collision. There were no traffic control signs to give either Hall or Hagood any preferential right-of-way. At this particular location the two city streets were being used as a detour for traffic through the city using U. S. Highway 54. Traffic from the north desiring to follow the detour turned west (to the right) at this intersection and traffic from the west desiring to follow the detour turned north (to the left) at this intersection.

There was a stop sign to control west bound traffic on First Street before it entered Clark Street and there was a stop sign to control north bound traffic on Clark Street before it entered First Street. It should be noted that these two stop signs did not control traffic into the intersection from the north or the west, the two collision courses of the vehicles in the present accident.

The point of impact was located after the collision by the chief of police as being in the southwest quadrant of the intersection. The principal damage to the Hagood vehicle was to the front end. The damage to the Hall vehicle was centered at the right front door. The investigating officer established the width of both streets at 30 feet. His measurements after the collision indicated that the Hall pickup traveled over 24 feet into the intersection before being struck by the Hagood pickup. The Hagood vehicle traveled 15 feet into the intersection before colliding with the Hall vehicle. After impact the Hall vehicle traveled 27 feet in a southeasterly direction and came to rest against a utility pole just across the curbing at the southeast corner of this intersection. The Hagood vehicle traveled 63 feet after impact in a south-southeasterly direction and came to rest against a tree some 36 feet past the Hall vehicle. After the collision Mr. Hagood was found unconscious on the ground to the south of the utility pole, some 30 feet from his pickup. He never regained consciousness.

In addition to the defendant there was one other witness to the collision. A Mr. Bunn testified he was driving immediately behind the Hall pickup, "between a car length and a car-and-a-half behind him." He further testified, ". . . I looked to see if there was

anything coming on 1st Street, and just as I looked back towards Mr. Hall's vehicle, the collision happened. I didn't see the Hagood vehicle until after the accident happened, but it was going East on 1st Street. . . ." Mr. Bunn testified that the speed of Mr. Hall's vehicle as it approached the intersection was between 15 and 20 miles per hour, that the right turn indicator signal on the Hall vehicle was flashing and never stopped before the collision.

In contradicting the testimony of Mr. Bunn concerning the turn signal, Mr. Hall testified that the turn indicators on his pickup were in good working order, that the right indicator was not turned on prior to entering the intersection, and that the indicator was not flashing prior to the collision. He further testified he had no intention of turning his vehicle and was proceeding straight south through the intersection. He was almost through the intersection when his vehicle was struck in the side by the Hagood pickup. This conflict in the evidence raised a question as to the defendant's negligence which was resolved by the jury. They returned a general verdict in favor of defendant.

The chief of police investigated and took measurements at the scene of the accident. He testified concerning the measurements taken, the extent of damage to the respective vehicles, and the posted speed limit (30 miles per hour). In addition he was permitted to give his opinion as to the speed of the Hagood vehicle. He estimated the speed at 30 miles per hour but on cross-examination he said this was more or less an "educated guess" and could be wrong by "5 miles an hour either way."

During his investigation, which was conducted 15 or 20 minutes after the accident, he discovered ". . . the brake pedal [on the Hagood vehicle] would go clear to the floor and there was no feeling of resistance before it touched the floor. . . ." He said there were no effective brakes on the Hagood pickup when it was tested but he did not know when or how the brakes may have become inoperative.

With this evidentiary background we will now consider the points of error raised by plaintiff-appellant on appeal.

One of the court's instructions advised the jury that although Clark and First Streets may have been used as a detour for U. S. Highway 54 through the city of Fort Scott, such did not change the right-of-way laws of this state relating to city street intersections.

The plaintiff suggests this was error and argues that the intersection was an uncontrolled curve in U. S. Highway 54. On this questionable premise she contends that when defendant continued south on Clark Street he crossed over the dividing center line of the highway, into the opposite lane of traffic and, in effect, made a left turn off U. S. Highway 54. This argument presents several intriguing questions of logic, one of these being whether a motorist may be considered to have made a left turn when he has proceeded in a straight line down a city street. The appellant's reasoning leads her to a conclusion that the law governing traffic at street intersections in cities did not apply under the facts of this case and the giving of such an instruction was error.

Fortunately or unfortunately, it is unnecessary for this court to embroil itself into such abstruse or esoteric considerations. The record presented indicates that this argument was not made to the trial judge and no instruction was lodged against the instruction in the court below. A party on appeal may not be heard to complain of an instruction given by the trial court to which no objection was made unless it is erroneous as a matter of law. (See 1 Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, § 344, for case citations.) Instructions to the jury become the law of the particular case and are controlling on appeal unless they are objected to either directly or by requesting substitute instructions. (*Boucher v. Roberts,* 187 Kan. 675, Syl. ¶ 1, 359 P. 2d 830.) The instruction given by the court cannot be held erroneous as a matter of law under the facts of this case.

The appellant's second point also relates to the instructions. The appellant requested, and the trial court refused to give, an instruction to the effect that because of the instincts of self-preservation and love of life it is presumed that John B. Hagood was exercising ordinary care to avoid injury at the time of the collision and that this presumption was overcome only if the jury was persuaded by the evidence that the contrary was true. Error is claimed because of the court's refusal to give the instruction.

This court has long recognized a presumption of due care on the part of a decedent. See *Long v. Foley,* 180 Kan. 83, 299 P. 2d 63, and the cases cited on page 91 of the reported case. However, it should be mentioned that many of the cases recognizing the "love of life" presumption came to this court from a ruling on a demurrer to plaintiff's evidence or a motion on behalf of plaintiff for a directed

verdict before any controverting evidence could be adduced as to plaintiff's contributory negligence. In those cases the presumption was recognized as a means of supporting a *prima facie* case. See, e. g., *In re Estate of Roth,* 191 Kan. 493, 382 P. 2d 320; *Long v. Foley,* supra; *Henderson v. National Mutual Cas. Co.,* 164 Kan. 109, 187 P. 2d 508; *Smith v. Bassett,* 159 Kan. 128, 152 P. 2d 794; and *Eidson v. Railway Co.,* 85 Kan. 329, 116 Pac. 485. Generally it has been held the presumption of due care is overcome when there is substantial evidence to the contrary. When a jury on the basis of substantial evidence returns a general verdict in favor of defendant, the jury has found either the defendant was not negligent or that plaintiff was guilty of contributory negligence. If the first alternative is true contributory negligence becomes immaterial in the case. If the second alternative is true there must be direct or circumstantial evidence of plaintiff's negligence in the case and the presumption disappears in the face of substantial evidence. The only question on appeal in such case is whether there was substantial evidence, regardless of the presumption, which will support the verdict.

The effect of the presumption of "love of life" falls within subsection (*b*) of K. S. A. 60-414. In *Akin v. Estate of Hill,* 201 Kan. 306, 440 P. 2d 585, it was said:

". . . [I]t seems manifest to us that the presumption comes within the second category set out in subsection (*b*) of the statute. Generally it is held that a presumption is not evidence but simply a rule concerning or relating to evidence. . . ." (p. 311.)

K. S. A. 60-414 (*b*) reads:

". . . [I]f the facts from which the presumption arises have no probative value as evidence of the presumed fact, the presumption does not exist when evidence is introduced which would support a finding of the nonexistence of the presumed fact, and the fact which would otherwise be presumed shall be determined from the evidence exactly as if no presumption was or had ever been involved."

In *Akin* it is pointed out this presumption is not evidence and the presumption entirely disappears from the case when relevant evidence is introduced which would support a jury finding of negligence on the part of the deceased. In *Long v. Foley,* supra, it was held:

". . . [S]uch presumption is rebuttable and may be overcome by direct or circumstantial evidence." (Syl. ¶ 3.)

In our present case there was both direct and circumstantial evidence introduced which if believed by the jury would overcome

the presumption of due care on the part of the deceased. There was no visual obstruction to prevent the deceased from seeing the other vehicle as it approached and entered the intersection on his left. If he looked he could have seen. The physical facts indicated that defendant's vehicle entered the intersection first and proceeded nine feet further into the intersection than did the deceased's vehicle. The deceased's vehicle ran directly into the side of defendant's pickup. In addition to the foregoing evidence both Mr. Bunn and the defendant Hall were present when the collision occurred and gave testimony from which a jury might find the deceased was contributorily negligent in lookout, control and failure to yield the right-of-way. There was additional testimony from the chief of police from which a jury might find the deceased was driving an old model pickup with defective brakes at or near the speed limit.

Under the evidence introduced in this case the presumption of "due care" was rebutted. When the case was submitted to the jury the presumption possessed no probative value and had no place in the instructions submitted to the jury. The case is controlled by *Akin* where it is held:

"Where there is substantial positive evidence of negligence on the part of a decedent killed by accident, an instruction that he is presumed to have been exercising due care to avoid injury because of the normal instinct of self preservation, should not be submitted to the jury." (201 Kan. 306, Syl. ¶ 2.)

Appellant's next point of error relates to the admission of opinion testimony on the speed of the Hagood vehicle. The only testimony as to such speed was that of the investigating officer, Chief Dwyer. He was permitted to testify over objection that on the basis of his post-accident investigation he estimated the speed of the Hagood vehicle at 30 miles per hour (the posted speed limit). An objection was directed to the qualifications of the officer, not to the lack of foundation facts on which his opinion was based.

When the court ruled the officer was qualified as an expert with special knowledge, skill and experience on the matter the only evidence of his qualifications was that he was the police chief in Fort Scott, had been in the police department for 12 years and had been frequently called to investigate automobile accidents.

In *Taylor v. Maxwell*, 197 Kan. 509, 419 P. 2d 822, it was pointed out:

"The qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial judge, and unless the judge

excludes the testimony he shall be deemed to have made the findings requisite to its admission." (Syl. ¶ 2.)

(See also *Hildebrand v. Mueller,* 202 Kan. 506, Syl. ¶ 1, 449 P. 2d 587.)

Longtime experience as a police officer with frequent investigations of auto accidents standing alone would appear to be a questionable basis for qualification as an expert in accident reconstruction. For approved qualifications of this nature see those of John F. Stackley in *McElhaney v. Rouse,* 197 Kan. 136, 144, 415 P. 2d 241, and limitations on his testimony approved by this court in *Staudinger v. Sooner Pipe & Supply Corporation,* 208 Kan. 100, 103, 490 P. 2d 619. There is no evidence in the present record that Chief Dwyer had received any special training in post-accident estimation of vehicular speed. Although he frequently investigated accidents, there is no suggestion of the number. He listed certain factors, such as damage to the vehicles, direction of travel and the distance each vehicle moved after impact, upon which his opinion of speed was based. He did not employ any precise calculations as to weight and force and he characterized his opinion in this manner. ". . . At best, this is more or less of an educated guess. . . ."

The necessary qualifications required of a witness by our trial courts before permitting a post-accident opinion on vehicular speed have been largely those of police experience in accident investigations. See *Foreman v. Heinz,* 185 Kan. 715, 347 P. 2d 451; *Johnson, Administrator v. Huskey,* 186 Kan. 282, 350 P. 2d 14; *Riley v. Holcomb,* 187 Kan. 711, 359 P. 2d 849; and *In re Estate of Roth,* 191 Kan. 493, 382 P. 2d 320.

In every case where such an opinion is called for the trial court must be conscious of the line of demarcation between speculation and opinions based on special knowledge. When opinion testimony as to a post-accident evaluation of vehicular speed is admitted in court it should be based upon proper foundation facts and be within the scope of special knowledge, skill, experience or training possessed by the witness. Pure speculation is not admissible in evidence. The qualifications of Chief Dwyer appearing in the record before us are not impressive. His evaluation of vehicular speed was neither impressive nor determinative of the case. On cross-examination he stated he could be wrong "by 20 or 25%". His opinion of the maximum speed of the Hagood vehicle placed the speed under the posted speed limit.

In the present case the trial court did base its decision as to the sufficiency of the expert's qualifications upon his position and experience in investigating accidents. Under the provisions of K. S. A. 60-456 (*b*) when such testimony is received in evidence the trial court is deemed to have made requisite findings as to the special knowledge, skill or experience to support the qualification of the witness as an expert. To reverse the trial court we must find an abuse of discretion on the part of the trial court.

This court has some question concerning the qualifications of the officer and the basis upon which his opinion of speed rested. We question the advisability of permitting the testimony at the trial. However, the credibility of the witness was adequately explored on cross-examination and we do not view the testimony on speed to be a determinative factor in this law suit. We decline to hold that the trial judge abused his discretion in admitting this inconclusive opinion on speed. We do not believe prejudicial error was committed which affected the substantial rights of the plaintiff. (See K. S. A. 60-2105.)

Appellant's next point of error is directed toward the giving of an instruction on the posted speed limit and the requirement that drivers approaching an intersection must keep their vehicles under proper control. No complaint is made as to the form of the instruction given. Appellant argues there was no admissible evidence as to speed of the Hagood vehicle. The instruction as given applied equally to the defendant, Hall, and to the decedent. There was evidence as to the speed of the defendant's vehicle and, in view of our previous conclusion as to the testimony of Chief Dwyer, there was evidence, however inconclusive it might be, of the speed of decedent's vehicle. The instruction was properly given.

Appellant's final contention is that the verdict was contrary to the evidence. We have previously outlined the evidence. This was largely a fact case which was tried to a jury and a general verdict rendered in favor of defendant. A general verdict for defendant, without special questions, resolves all controverted issues of fact against the plaintiff. (*Cole v. Dirkson*, 202 Kan. 431, Syl. ¶ 2, 449 P. 2d 584.) Under the evidence the jury might find that the defendant was not negligent, and there was substantial evidence that John B. Hagood was guilty of contributory negligence. When there is substantial competent evidence to support the jury's verdict, as there is in the present case, it will not be disturbed on appeal.

Judgment is affirmed.