No. 48,582

PLAINS TRANSPORT OF KANSAS, INC., *Appellant,* v. WALTER L. KING, d/b/a KING BROTHERS OIL COMPANY, and GARY L. KING, *Appellees.* (578 P.2d 1095)

Opinion filed May 6, 1978.

*Otto J. Koerner* and *Randall H. Elam,* of Koerner & Elam, of Wichita, argued the cause and were on the brief for the appellant.

*Robert C. Martindell,* of Martindell, Carey, Hunter & Dunn, of Hutchinson, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from a jury verdict denying recovery of damages to a tractor and tank-trailer which were destroyed by fire while gasoline was being transferred from the tank-trailer to a bulk storage tank.

Plaintiff-appellant, Plains Transport of Kansas, Inc. (Plains), was the owner-lessor of the tractor and tank-trailer. Groendyke Transport Company, Inc. (Groendyke), was the lessee-operator at the time of the accident. Walter L. King, d/b/a King Brothers Oil Company (King Oil), was the owner of the bulk storage tank. Gary L. King is Walter L. King's son and an employee of King Oil. King Oil and Gary King are the defendants-appellees herein.

On May 23, 1973, James C. Ward, an employee of Groendyke, arrived at defendants' service station for the purpose of delivering an 8,400-gallon load of gasoline. This was Ward's first delivery to King Oil, although Groendyke had been delivering gasoline to the station for several years. When Ward arrived Walter King instructed him to fill the underground tanks at the front of the station. He was then instructed to unload the balance, approximately 4,200 gallons, into a large overhead bulk storage tank located at the rear of the station.

According to Ward, Gary King and Walter King told him the overhead tank was divided into two equal compartments with a capacity of 4,500 gallons each. They further told him the gasoline in the tank-trailer should be pumped into the west compartment, which was completely empty. The tank-trailer was divided into four compartments of unequal capacity, totalling 8,400 gallons. After filling the underground tank, Ward calculated he had 3,600 gallons remaining in the number two compartment, which was not enough to fill the west compartment of the overhead tank.

Ward further stated that Walter King gave him the instructions for filling the overhead tank while Gary King unlocked its valves and adjusted them so the west compartment could be filled. Ward then connected the number two compartment to the overhead tank, turned one of its valves, and proceeded to unload the gasoline. After he started the unloading, he checked for leaks and saw none. Approximately twenty minutes later he climbed on top of the tank-trailer and observed that approximately one hundred gallons of gasoline remained in the compartment. As he started to climb down to the ground he heard the engine speed up and saw sputtering and droplets come from the vent in the overhead tank. When he reached the ground he closed the valve to the number two compartment and pulled the emergency valve to close all the other compartments. Ward then climbed into the tractor cab to shut off the engine. A flash occurred immediately after he shut off the engine, and as he jumped out of the cab it was engulfed in flames.

The fire burned intensely for more than two hours. During that period the fire burned around the overhead tank and under the tractor and tank-trailer. At some point the fire burned through the hose connecting the tank and the tank-trailer and gasoline flowed from the overhead tank and burned, as it had no internal safety

check valve. Heat from the fire caused the legs on the overhead tank to buckle and the tank fell, rupturing and causing gasoline to escape from the tank. By the time the fire was extinguished, five hours after it started, the tractor and tank-trailer were completely destroyed.

Plaintiff sued King Oil on the theory that the Kings told Ward the large overhead tank was completely empty before he began filling it when in fact it contained gasoline; that the overhead tank overflowed and gas ran onto the ground where it was ignited; that the legs on the overhead tank were not designed in conformity with the state fire marshal's regulations to withstand fire for two hours and the legs buckled under the heat, allowing the tank to fall; that when the tank fell it broke the outside pipes loose and gas flowed from the tank because it did not have an internal check valve as required by the state fire marshal's regulations; and that because of all these facts plaintiff's tractor and tank-trailer were destroyed.

Plaintiff produced testimony from numerous sources to support its theory. Jewell Billings, a neighbor, was deposed prior to trial and her deposition was admitted in evidence. Her testimony indicated that she lived in a house located between seventy-five and one hundred feet east of the overhead tank. On the day of the fire she observed Ward unloading his tank-trailer. She looked out her window when she heard a tractor motor speed up and observed a fountain of gasoline shooting up nearly two feet from the top of the vent. The gas was running down the side of the overhead tank onto the ground and flowing toward the tractor and tank-trailer. At the same time she observed the driver run to the front of the tractor cab and stop the engine. This is when the explosion occurred. She watched the fire trucks arrive and noticed that the large overhead tank fell about thirty to forty-five minutes after the fire started. When this happened the unloading pipe broke and fuel ran from the tank. Before this happened she had noticed that the tractor and tank-trailer were on fire and some of the compartments on the trailer had already melted.

Plaintiff used Kenneth Razak, a consulting engineer, as an expert to reconstruct the cause of the fire. He went to the scene of the fire six days after it occurred, made detailed observations, took photographs and preserved evidence. Based on his studies he concluded each compartment of the overhead tank held 4,150

gallons of liquid, and each compartment was sealed from the other. The position of the valves indicated the east compartment to be closed and the west compartment to be open. Considering these facts, along with the statements of Ward and Mrs. Billings, he concluded that the west compartment of the tank must have had gasoline in it when Ward started unloading gasoline from the tank-trailer; that it would not hold all the gasoline and therefore overflowed; that the overflowing gas ran onto the ground and under the tractor and tank-trailer; and that a spark from some source ignited the vapors, causing the fire. He also stated it was impossible to determine whether the gas could have leaked from another source such as the unloading hoses because they were destroyed by the fire.

Defendants produced evidence countering plaintiff's theory. Walter King admitted that he and his son had given Ward instructions on how to fill the overhead tank, but denied ever stating the capacity of the tank. He also denied telling Ward to fill only the west compartment of the tank. Gary King corroborated his father's statements.

Norman Byers was defendants' key witness. His testimony was contrary to the conclusions drawn by Razak. Byers heard testimony of the witnesses, read depositions given by Ward and Razak, read Razak's report, examined photographs taken of the scene of the fire, and visited the scene. From these sources Byers concluded the overhead tank had not overflowed, but that the phenomenon (sputtering) observed by Ward was venting which occurred when the tank was approximately 390 gallons short of being full. Based on the information he possessed he theorized the gasoline which started the fire came from some other source, but he could not pinpoint the location because any evidence of the location was destroyed in the fire.

The jury returned a defendants' verdict.

The three issues involved in this appeal are the use of expert witnesses, the jury instructions, and whether plaintiff was entitled to a directed verdict.

## Expert Witnesses

Plaintiff argues it was improper for the trial court to allow Fire Chief Delmar Hill and Norman Byers to give opinions as experts. Plaintiff's complaints against Hill are: (1) He was not qualified as an expert to give an opinion as to the cause of the fire, and (2) his

opinion was contrary to the undisputed evidence. Byers' testimony is challenged by plaintiff on four grounds: (1) He was not qualified as an expert to give an opinion as to the cause of the fire, (2) his opinion was not based on undisputed evidence, (3) his opinion was based on speculation, and (4) his opinion constituted an inference upon an inference.

The purpose of an expert witness is to aid the jury in the interpretation of technical facts or to assist in understanding the material in evidence. (*Staudinger v. Sooner Pipe & Supply Corporation,* 208 Kan. 100, 105, 490 P.2d 619 [1971].) The witness must have skill or experience in the business or profession to which the subject relates. He must be qualified to impart knowledge within the scope of his special skill and experience that is otherwise unavailable to the jury. (*State v. McClain,* 216 Kan. 602, 606, 533 P.2d 1277 [1975]; *Grohusky v. Atlas Assurance Co.,* 195 Kan. 626, 630, 408 P.2d 697 [1965].)

The introduction of opinion or expert testimony is controlled by K.S.A. 60-456. An expert must base his testimony upon facts personally perceived by or known to him or made known to him at the hearing. "Perceived" means knowledge acquired through one's own senses. (K.S.A. 60-459[c].) "Made known" refers to facts put into evidence. (*Ziegler v. Crofoot,* 213 Kan. 480, 484, 516 P.2d 954 [1973]; *Trimble, Administrator v. Coleman Co., Inc.,* 200 Kan. 350, 356, 437 P.2d 219 [1968]; *Casey v. Phillips Pipeline Co.,* 199 Kan. 538, 546, 431 P.2d 518 [1967].) The qualifications of an expert witness and the admissibility of his testimony are within the sound discretion of the trial judge. (*State v. McClain,* supra; *Hagood v. Hall,* 211 Kan. 46, 51-52, 505 P.2d 736 [1973]; *American Family Mutual Ins. Co. v. Grim,* 201 Kan. 340, 344, 440 P.2d 621 [1968]; *Taylor v. Maxwell,* 197 Kan. 509, 419 P.2d 822 [1966].) When the trial court admits the testimony it is deemed to have made the findings requisite to its admission. (K.S.A. 60-456[c]; *State v. McClain,* supra; *Hagood v. Hall,* supra; *Taylor v. Maxwell,* supra.) At that point the weight of such testimony is a matter of consideration for the trier of fact. (*American Family Mutual Ins. Co. v. Grim,* supra; *Virginia Surety Co. v. Schlegel,* 200 Kan. 64, 70, 434 P.2d 772 [1967].)

Questions posed to an expert witness are not required to be in hypothetical form if the expert can be presented the pertinent facts in some other acceptable manner. (K.S.A. 60-458; *Ziegler v.*

*Crofoot,* supra; *Staudinger v. Sooner Pipe & Supply Corporation,* supra at 104-05; *Howard v. Stoughton,* 199 Kan. 787, 790, 433 P.2d 567 [1967].) A judge may, however, require the witness to be further examined concerning the data upon which an opinion will be based to determine whether the witness is sufficiently advised of relevant and material matters to formulate a proper opinion. (K.S.A. 60-457; *Ziegler v. Crofoot,* supra; *Staudinger v. Sooner Pipe & Supply Corporation,* supra at 105.)

In the instant case both Hill and Byers set forth their credentials and were subjected to further cross-examination before they were allowed to express any opinion on the possible cause of the fire. Hill was the Chief of the South Hutchinson Volunteer Fire Department. In addition to the training and experience received in that capacity, the witness had attended several fire reconstruction schools, although the number of schools attended and the amount of training received is unclear from the record. We cannot say the trial court abused its discretion in allowing Hill to testify as an expert. The record indicates the trial court examined Hill in regard to his qualifications and found them adequate. The substance of the examination does not appear in the record. If the record could have demonstrated a deficiency in Hill's expertise, it was plaintiff's responsibility to bring that evidence before this court.

Norman Byers was an engineer with more than thirty years of experience. He has a bachelor's degree in mechanical engineering, a master's degree in machine design, and a doctor's degree, all from Kansas State University. Byers taught engineering for several years at Wichita State University and at New Mexico State University. He also served as a consultant for Boeing Airplane Company, Phillips Petroleum, Idaho Nuclear Corporation, and White Sands Missile Range. He specialized in the study of material strength, heat transfer and fluid flow. At Phillips Petroleum he became involved in fire reconstruction and, although he had never been involved with fire reconstruction of a bulk gasoline storage tank, he had been involved in reconstruction work on mobile homes, buildings, residences and bulk propane tanks. His background and experience were more than sufficient to meet the "expert witness" qualifications necessary under K.S.A. 60-456(*b*).

Plaintiff objected to Hill's testimony on the cause of the fire, arguing it was based on hearsay and that it was contrary to the

undisputed evidence of plaintiff's witnesses, thus impermissibly passing upon their credibility. A review of the record indicates Hill based his opinion as to the possible cause of the fire on his observations as he fought the fire, and on Ward's deposition. Although not specific, plaintiff alleges part of his opinion was based on hearsay evidence, apparently statements of Ward. Reliance on Ward's statements would not be impermissible because Ward testified at trial. We find no evidence that Hill testified as to the credibility of other witnesses. (See, *Smith v. Estate of Hall,* 215 Kan. 262, 524 P.2d 684 [1974].) Hill testified the fire might have been caused by Ward because it was the first time he had unloaded gasoline at the station and he was not familiar with the facility. The jury was entitled to accept or reject Hill's interpretation of the facts and his theory as to the cause of the fire.

Plaintiff also argues Byers should not have been allowed to express an opinion because it was not based on undisputed fact. Byers was called to testify, not as to the cause of the fire, but as to whether the overhead tank overflowed, causing the fire. This issue was the crux of the lawsuit. Plaintiff alleged it overflowed, causing the fire; defendant alleged it did not overflow and that the fire originated at some other place. Byers reviewed the available evidence and concluded the tank did not overflow. His opinion was based on the observation of Ward, the driver, who testified he saw "sputtering" from the vent and saw no gas running down the tank or onto the ground. Byers concluded from that observation and from his own extensive knowledge as a fluid dynamics expert, that Ward had seen a scientific phenomenon (sputtering) which occurred when the tank was approximately 390 gallons from being full. In addition, Byers' conclusion coincided with the testimony of three witnesses who said the overhead tank was empty before Ward began filling it, of Ward's testimony that he had only 3,600 gallons of gasoline in compartment number two of the tank-trailer, and of Razak's testimony that the overhead tank had a capacity of 4,150 gallons. Byers further buttressed his opinion by pointing out that if the tank had overflowed there would have been flames on top of the tank when the fire department arrived, but none of the firemen recalled seeing any flames on the top of the tank near the vent.

The only testimony which Byers seems to dispute is that of Mrs. Billings. When asked how he could justify his opinion in

light of her testimony, Byers stated that Ward was in a better position to see what had happened. The comment was permissible under the facts of this case. The evidence before the jury was extensive. The testimony of Ward and Mrs. Billings conflicted. Reconciling the evidence called upon knowledge far beyond that possessed by the jury. While it is not permissible for an expert to pass upon the credibility of the witnesses or to give an opinion contrary to the undisputed facts of a case (*Smith v. Estate of Hall,* supra; *Atkins v. Bayer,* 204 Kan. 509, 511, 464 P.2d 233 [1970]; *Frase v. Henry,* 444 F.2d 1228, 1231 [10th Cir. 1971]), he can assist a jury in arriving at a reasonable factual conclusion from the evidence. Gard, Jones on Evidence, Opinion Testimony, §14.28, p. 660 (6th ed. 1972), states:

"Although an expert witness may not usurp the jury function of weighing the evidence and deciding what the facts are, the question of arriving at a reasonable factual conclusion from the evidence which is believed is quite another matter. This, too, is a jury function, but in technical or other matters requiring special knowledge, skill, experience, and the like, the jury or the judge trying the case may be quite at sea without the aid of those who understand the mysteries better than they of little or no experience in such matters.

"If it may be said that there still exists a general rule to the effect that a witness may not express his opinion upon an ultimate issue of fact, it is obvious that the extensive relaxation of the rule turns it into what amounts to an expression by the courts of reluctance or reserve in the receipt of even expert opinion which would seem to substitute the witness for the jury or the judge in the final decision. On this basis what would seem to be confusion and conflict may be looked upon as reflecting a trend toward a common sense and not an arbitrary view. This common sense view is to receive the opinion testimony where it appears that the trier of the fact would be assisted rather than impeded in the solution of the ultimate problem."

We do not find Byers' opinion to be pure speculation as plaintiff argues. Byers testified the overhead tank did not overflow. The record discloses a factual foundation sufficient to support this opinion. (See, *Farmers Ins. Co. v. Smith,* 219 Kan. 680, 689, 549 P.2d 1026 [1976], and authorities cited therein.) He also testified the fuel causing the fire must have originated at some other location. This opinion was based on the same factual foundation. In *Virginia Surety Co. v. Schlegel,* supra, the court stated:

"As many inferences may be drawn from a fact, or a state of facts, as it will justify, so long as each has a factual foundation, without violating the rule against inference based on inference." (Syl. 5.)

Plaintiff's contention that Byers' opinion was based on an infer-

ence upon an inference has no merit. (*Farmers Ins. Co. v. Smith,* supra; *Broyles v. Order of United Commercial Travelers,* 155 Kan. 74, 122 P.2d 763 [1942].)

### Jury Instructions

Plaintiff's basic theory of recovery was negligence *per se.* It was alleged that when the overhead tank overflowed and caught fire it fell because of insufficient supports, causing more gasoline to flow under the tractor and tank-trailer. According to plaintiff the equipment would not have been so severely damaged if King Oil had complied with the state fire marshal's regulations calling for tank supports which could withstand flame for two hours and if the overhead tank had been equipped with an internal check valve.

The trial court instructed the jury on negligence *per se.* Plaintiff argues the instruction was inadequate. We do not agree. In order to recover on a negligence *per se* theory there must exist: (1) A violation of a statute, ordinance or regulation, and (2) the violation must be the cause of the damages resulting therefrom. (*Noland v. Sears, Roebuck & Co.,* 207 Kan. 72, 483 P.2d 1029 [1971].) That was the substance of the instruction given to the jury.

### Directed Verdict

Plaintiff argues it should have been entitled to a directed verdict because of the negligence *per se* theory after defendants admitted violation of the fire regulations. Plaintiff's argument overlooks the requirement the violation be the proximate cause of the damages for which plaintiff seeks recovery. (*Noland v. Sears, Roebuck & Co.,* supra.) Under the facts of the case the issue was one properly left for the jury. Defendants argue the tractor and tank-trailer would have been destroyed notwithstanding the violation of the regulations. The evidence tended to support this conclusion. Mrs. Billings and Fire Chief Hill testified that the tractor and tank-trailer had already caught fire and three of the trailer's compartments had melted prior to the time the overhead storage tank fell and additional gasoline poured onto the ground. Whether the presence of the additional gasoline had any effect on the destruction of plaintiff's tractor and tank-trailer was for the jury to determine.

A review of the evidence in the case also leads us to the conclusion that the cause of the fire was in doubt and a motion for

a directed verdict based upon the overhead tank overflowing was properly overruled.

The judgment of the trial court is affirmed.